In the Matter of the Claim of ANNA M. PFLUG, Respondent, against ROESCH & KLINCK, INC., and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, March 27, 1930.

*Alfred W. Andrews [Carlton E. Ladd of counsel], for the appellants.*

*Hamilton Ward, Attorney-General [E. C. Aiken, Assistant Attorney-General, of counsel], for the respondents.*

PER CURIAM. The award is for death benefits to dependents. The employer was an automobile dealer having a garage and show room on Main street in Buffalo. A Mr. Forrest left his Locomobile in the garage for repairs. The sales manager took up the subject with Forrest of selling him a new car. The offer of an allowance in price for the Locomobile was not satisfactory so it was arranged that the sales manager should try to sell the car at a better price.

Edward Pflug was a salesman in the employ of Roesch & Klinck, Inc., the employer. In general he worked on a commission and used his own car, being furnished some prospects by his employer and finding others for himself. When engaged with his own car there was no limitation upon his hours or the locus of his work.

When he took his employer's car for demonstration or a used car for the purposes of sale, he and other salesmen were required to tell where they were going and when they were coming back and obtain permission to use the car for the specific purpose of demonstration. This was apparently entered in a book and the salesman had no authority or right to demonstrate such cars except to people that were named by him and that he had been given permission to visit.

About two-thirty in the afternoon of Saturday, June 4, 1927, Pflug was given permission to take the Forrest car to demonstrate and make a contract with a prospect named Lopez who lived at Blasdell, four miles south of the Buffalo city limits. He visited Lopez and made a contract in writing for the sale of this car for $1,400 and received a check for $10 on account thereof. This contract, as were all others made by salesmen, was subject to the approval of the employer. This was of course particularly required in this case because the approval of Forrest was necessary.

Instead of returning to Buffalo as was his duty Pflug went in the opposite direction to Hamburg. There he went to a speak-easy and remained for about an hour and a half drinking and visiting with a man by the name of Andres and perhaps others. Andres was a friend and former customer of Pflug but their meeting was apparently accidental for there is no evidence of an appointment. In the month of May preceding, Pflug had sold Andres a used Flint car. He had six months before shown him a Locomobile. The sale of the Flint car was on the installment plan and at the time of the hearing a year later, Andres had not yet finished paying for the car. There was talk about automobiles but no offer to sell Andres this car and from the facts already stated it is evident that the latter was not contemplating the purchase of any different car. The Locomobile was mentioned but nothing was said about price. Pflug said he would like to show the Locomobile to Andres and the latter said he had ridden in one. Pflug replied: " You haven't ridden in this one," and they went for a ride. They had not proceeded a mile when apparently through reckless driving on the part of Pflug there was an accident in which Pflug was killed.

It is sought by drawing inferences from the relations of Pflug and Andres to establish that Pflug was still engaged in his employer's business. The well-established facts do not permit any reasonable inference of that nature. The errand which had taken him from Buffalo in the car he was permitted to use had been discharged when he made a contract with Lopez. He had no occasion or authority to make a new contract for a car already sold if his employer approved, as was likely. His visit to Hamburg was a

" frolic " and not a " detour." (See *Bryan* v. *Bunis*, 208 App. Div. 389.) The accident did not occur in the course of his employment for his work had created no necessity for his visit at Hamburg. The risk on that errand, which was one for recreation and social enjoyment, was personal. (*Matter of Marks* v. *Gray*, 251 N. Y. 90; *Matter of Conrad* v. *Meldrum Motor Corp.*, 250 id. 564.)

We think it well to add that it was with great difficulty that the counsel for the employer and carrier was able to make proof of certain competent and important facts. The attitude of the referee was indifferent and hostile. We have had occasion before to call attention to the fact that referees sit in a quasi-judicial capacity to determine the facts and to interpret to some extent the law. During the hearing their minds should be open and their attitude impartial in order that substantial justice may be done between contending parties. We regret to say that did not seem to be the attitude of the referee presiding in this case.

The award should be reversed and the claim dismissed, with costs against the State Industrial Board.

HINMAN, Acting P. J., DAVIS, WHITMYER and HILL, JJ., concur; HASBROUCK, J., dissents and votes for affirmance.

Award reversed and claim dismissed, with costs against the State Industrial Board.