No. 39,125

ODESSA BELL, *Appellee,* v. A. D. ALLISON DRILLING COMPANY INC., and ST. PAUL MERCURY INDEMNITY COMPANY, *Appellants.*

(264 P. 2d 1069)

Opinion filed December 12, 1953.

*J. A. Herlocker,* of Winfield, argued the cause, and *Harry O. Janicke,* of Winfield, was with him on the brief and counter abstract for appellee.

*William Tinker,* of Wichita, argued the cause, and *Getto McDonald, Arthur W. Skaer, Hugh P. Quinn, William Porter,* all of Wichita, were with him on the brief and abstract for appellant.

The opinion of the court was delivered by

HARVEY, C. J.: This is a workmen's compensation case. Harvey T. Bell was killed May 28, 1952, a short distance south of the north line of Harvey county when his automobile which he was driving south on state highway No. 15 left the road and crashed in a ravine. His widow, the appellee here, filed a dependent's application for compensation. The Workmen's Compensation Commissioner entered an award in favor of the claimant which was affirmed by the district court on appeal. The respondent and its insurance carrier have appealed to this court.

The specific questions presented for our determination are whether Bell received his fatal injuries in an accident which arose out of and in the course of his employment with respondent, or whether he was on his way to assume the duties of his employment as defined by G. S. 1949, 44-508 (k); whether there was a causal relationship between the fatal injuries and Bell's employment by respondent and whether there is any substantial evidence to support the district court's judgment.

The pertinent facts may be stated briefly as follows:

The A. D. Allison Drilling Company, Inc. has its headquarters in the Brown Building in Wichita and operates a rotary drilling rig for the drilling of oil or gas wells. Bell was an oil field worker and driller. He had been drilling such wells with rotary rigs for five or six years and intermittently for about two years with the Allison Company. A drilling crew consists of the driller and three helpers who, in the vernacular of the oil field, are spoken of as roughnecks. Bell had not done any drilling for Allison for five or six weeks prior to his death and the crew he had when he last drilled had become separated. However, he had worked for Allison in some capacity other than a driller up to sometime early in May, 1952. He had not worked for Allison between May 10, and May 28, 1952, with the exception of May 19, when he was called into Wichita in connection with an accident report not here important. Bell and his wife lived in Oxford, about forty miles south and east of Wichita.

On May 28, 1952, soon after noon, Jim Allison, president of the corporation, called Bell and told him the company was beginning the drilling of a well known as Kim No. 1 located nine miles north of Burrton and asked Bell if he could report for work there the next morning at 8:00 o'clock; Bell answered that he could. Bell had been working for two or three weeks for a man by the name of Russell Sawyer in Oxford who had a welding and oil field salvage business. Bell went promptly to Sawyer and stated that he hated to leave him shorthanded but he would have to get a crew together that afternoon; that the well rig was starting up the next morning. Bell also told his wife, "I have got to find me a crew." He called a man by the name of McDaniel at Perry, Oklahoma, but he was not available; he also went to see a Mr. Brown at Oxford but he had a job; he spoke of a Mr. Faris at McPherson who had worked with him on previous occasions and of having to locate Faris. He talked to his daughter, June Harp, and told her he was worried about not

having a crew and said he wished he had known ahead of time because it was hard to get them together. He also spoke of Faris and said he would have to go to McPherson to see him.

At previous times when he had made trips to McPherson he had gone west from Wichita then north through Burrton and not through Newton; he was unfamiliar with the route through Newton. Bell packed his bags and left home about 3:30 in the afternoon. He stopped for gas at the Bailey filling station located at Maple and West streets in Wichita. There was evidence tending to show that was between 4:00 and 5:00 o'clock. He reached Valley Center, which is nine miles north of Wichita on the road to Newton and two miles west, between 5:30 and 6:00 o'clock and went to a cafe owned by Olen Troyer whom he knew. He was looking for two men, White and Rhodes, who he said were his roughnecks and he wanted them if he could get them. Troyer took him to Mr. White's mother's home where he talked with her and from there to the Rhodes home where he talked with Mrs. Rhodes. Neither of the men was at home. He told what he wanted and asked that the men get in touch with him and to call him that night at the McCourt hotel in McPherson. He left a note with Troyer for Rhodes which he delivered, and also left one with Mrs. Rhodes to have Mr. Rhodes call him at McPherson. He did not tell Troyer whether he had any part of a crew; the only thing he said was that he had to get a crew together. When Bell left Valley Center he didn't say where he was going. From Valley Center east two miles, then north on U. S. highway No. 81 to Newton is about eighteen miles. His movements in Newton are not disclosed.

On the evening of May 28, 1952, Clark Hagen, who lives in Newton, was traveling north from Newton on highway No. 15, which is the main street north out of Newton. At the north edge of Newton U. S. highway No. 81 turns at about a forty-five degree angle to the west of north; highway No. 15 continues straight north. The witness started north on this road about 8:30 p. m. and was traveling about thirty miles per hour. A Ford automobile with a Cowley county license passed him. The witness drove north to the county line about nine miles north of Newton and turned around; while turning on the county road at that point he saw another car headed east on the county road which was also turning around; it was the same Ford car which had passed him. He saw the occupant of the car was a man. When the witness turned around he started south

on the highway at a slow speed as he was driving a new car. The Ford car which had turned around passed him at about the same speed as it was traveling when it went north. When the Ford car passed him it cut back quickly and stayed on the right-hand side of the highway. The witness followed the Ford car until he saw it leave the highway and crash in a ravine on the west side of the road; at that place there was a slight curve in the road. When he got to the place where the car crashed he noticed it was on fire underneath the hood; he went to the car and saw a man lying in the car. The witness removed the body from the car and saw on an identification card the name Harvey T. Bell. Hagen tried to feel a pulse and put his ear to Bell's chest to see if there was a heart beat and could find none. He could detect no liquor on Bell. Dr. Martin, a physician and the Harvey county coroner, was called to the scene of the accident that night and examined Bell there and at the hospital later. His examination showed a crushing chest injury, fractures of most of the ribs and a broken sternum. The cause of death was the crushing chest injury. In his opinion death was almost instantaneous. The car was in the ravine on the west side of the road at the side of a culvert. It had not struck the culvert and there was no apparent collision with any other car.

The trial court approved and adopted the filing of an award of the Workmen's Compensation Commissioner, except as modified in a respect not here important, as follows:

"1. That the deceased at the time of the accident was not on his way to assume the duties of his employment as defined by Sec. 44-508 (k), G. S. 1949.

"2. That deceased's pay was not to begin until the following day, but this is not material since compensation is not necessarily involved in the relationship of employer and employee.

"3. It is the custom of the employment that the driller hire and procure his own crew.

"4. It was expected, contemplated and assumed that the deceased would do so in this instance.

"5. The hiring of the crew was beneficial to both employer and employee.

"6. The hiring of the crew by the deceased was a condition and obligation of the employment.

"7. Under the circumstantial evidence, the fatal accident occurred while deceased was engaged in an effort to hire his crew.

"8. There is a causal relationship between the employment and the fatal injury of the deceased."

The court's further findings pertain to the amount of compensation and how it should be paid. These are not complained of if

the claimant is entitled to recover. The award appealed from was made by the court in harmony with the above findings.

In this court counsel for appellants strongly urge that the claimant is barred from recovery by reason of our statute G. S. 1949, 44-508 (k) which reads:

"(k) The words 'arising out of and in the course of ·employment' as used in this act shall not be construed to include injuries to the employee occurring while he is on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

In connection with this argument they cite and rely heavily upon our opinions in *Repstine v. Hudson Oil Co.*, 155 Kan. 486, 126 P. 2d 225; and *Abbott v. Southwest Grain Co.*, 162 Kan. 315, 176 P. 2d 839, and the cases cited in those opinions. We have carefully read the statute and the decisions cited and conclude that the statute and opinions are not applicable to the facts found by the court here.

Bell's normal route to his work where the well was to be drilled was not through Newton but took him west of there perhaps twenty miles. His employer Allison expected him to come to work on the next day with his crew. The case is more nearly covered by *Stapleton v. State Highway Comm.*, 147 Kan. 419, 76 P. 2d 843; *Hilyard v. Lohmann-Johnson Drilling Co.*, 168 Kan. 177, 211 P. 2d 89; and *Blair v. Shaw*, 171 Kan. 524, 233 P. 2d 731, and the cases cited in the opinions of those cases.

The trial court found that Bell, at the time of his injuries, was looking for members of his crew. Every witness testifying on this point gave testimony to the effect that it was the driller's duty to get his crew together. In rare instances did the employer suggest the name or give the telephone number of a man who might be secured to work on the crew. The driller selected the members of the crew, made the contract of hiring with them, and fired them if he found them insufficient, without consulting his employer. The evidence shows they were paid by the Allison Drilling Co. Inc. and only for the actual time they worked. Of course, Bell did not show up at the place for the drilling of the well on the morning of May 29, 1952, neither did anyone show up to work with Bell as a member of his crew. Allison had made no effort to get a crew for Bell.

Appellant makes further contention that the evidence was not sufficient to support the findings of the trial court. We have previously recited the substance of this evidence. It was the function of

the trial court, not this court, to weigh that evidence. See *Woodfill v. Lozier-Broderick & Gordon,* 158 Kan. 703, 705, 149 P. 2d 620. We think the evidence was ample to support the findings of the trial court.

We find no error in the record. The judgment of the trial court is affirmed.