No. 93,546

CHRIS A. SUMNER, Deceased, *Appellant*, v. MEIER'S READY MIX, INC., and ZURICH U.S. INSURANCE COMPANY, *Appellees*.

144 P.3d 668

Opinion filed October 27, 2006.

*Lawrence M. Gurney*, of Wilson, Lee, Gurney, Carmichael & Hess, of Wichita, argued the cause and was on the briefs for appellant.

*Wade A. Dorothy*, of The Dorothy Law Firm LLC, of Lenexa, argued the cause, and *Douglas A. Dorothy*, of the same firm, was with him on the briefs for appellees.

The opinion was delivered by

LUCKERT, J.: This is a workers compensation case involving an employee's death as a result of a one-vehicle accident while the employee was driving a company truck but running a personal errand. This court granted the petition for review filed by employer Meier's Ready Mix, Inc., and its insurer, Zurich U.S. Insurance

Co., (collectively referred to as Meier's) in which they sought review of the Court of Appeals' decision reversing the decision of the Workers Compensation Board (Board). The Court of Appeals held that, under the facts, the employee's trip home for a personal emergency fell within the traveling exception to the "going and coming" rule; therefore, the employee, by and through his surviving wife, was entitled to workers compensation benefits. Meier's argues that, in so holding, the Court of Appeals failed to properly apply the correct standard of review and impermissibly reweighed the evidence. We agree and reverse the Court of Appeals and affirm the decision of the Board.

*Facts*

Chris A. Sumner lived in Council Grove, Kansas, and drove a semi-truck/flatbed trailer for Meier's. For the mutual convenience of Meier's and Sumner, the employer allowed Sumner to take the truck home every night, and Sumner was then dispatched out of his home each morning. When Sumner would arrive at his residence, sometimes the truck remained loaded but generally it was empty. If his truck was full when he arrived at home, Sumner would deliver the load the next morning.

In the early morning hours of September 30, 2002, Sumner left home, picked up a load at a Meier's plant in Sugar Creek, Missouri, and made a delivery in Emporia around 7 a.m. Sumner then returned to Sugar Creek to pick up another load for delivery to Emporia. Meanwhile, Eric Schneider, the Ozawkie plant assistant manager and the dispatcher for Meier's, called Sugar Creek and left instructions for the first two Meier's drivers who arrived at the plant to call him. Schneider intended to direct those drivers to deliver loads of cement to Junction City. Sumner was the first driver to call Schneider. Before Schneider could issue instructions regarding Junction City, Sumner, sounding upset, announced that he had gotten a call from home and needed to take care of an emergency. Schneider did not ask about the nature of the emergency, and Sumner did not explain.

Schneider gave Sumner permission to go home and handle the emergency. Sumner's truck had been loaded with bagged and pal-

letized cement for the next delivery, and Schneider explained that the load was to go to Junction City. It was Schneider's intention that Sumner make the delivery that same afternoon if time permitted. Schneider indicated in his deposition, however, that after Sumner had taken care of his emergency, Sumner was to call him for purposes of deciding whether the load would be delivered that afternoon or first thing in the morning.

Thus, with his employer's approval, Sumner deviated from the business route along I-70 from the Kansas City metropolitan area to Junction City and, instead, left I-70 and headed south toward Council Grove on K-177. Tragically, a one-vehicle accident occurred on Sumner's way home, about 15 miles south of the I-70/K-177 intersection and about 13 miles north of Council Grove. Sumner was killed. Pamela Sumner, his surviving wife (Claimant), applied for workers compensation benefits.

### ALJ Award

The administrative law judge (ALJ) awarded benefits to the Claimant. The ALJ found it significant that Sumner's employer gave him permission to go home and take care of the family emergency and that Sumner was expected to advise Schneider whether he would complete the trip to Junction City that day or was going to wait and finish the trip the following morning. The ALJ observed that Meier's tried to limit its drivers' shifts to 12 hours. At the time of the accident, Sumner had been working for approximately 11 hours. The ALJ found: "[I]t is more probable than not that [Sumner] was not going to make the delivery to Junction City that day and he was on his way home to stay. Therefore, . . . the accident is compensable." Because Sumner's traveling was made in a company vehicle, the ALJ concluded that Sumner's death arose out of and in the course of his employment.

### Workers Compensation Board

Meier's appealed to the Board. At oral arguments before the Board, the employer acknowledged that, if Sumner was going home to stay with no intention of returning with his truck load to Junction City until the next day, the injury would be compensable.

The Board, however, found it significant that the parties stipulated that the errand undertaken by Sumner when he deviated from his delivery route was a purely personal errand with no business-related purpose. In a 3 to 2 decision, a majority of the Board reversed the ALJ's award.

The majority based its decision largely on long-standing precedent establishing that accidental injuries which occur on dual purpose excursions, where the benefit is both to the employer and the employee, are generally compensable; however, the dual purpose rule does not extend to situations where the employee would not have proceeded on the excursion if the personal errand had been abandoned or postponed. The majority of the Board found that Sumner's intended length of stay in Council Grove could not be determined by the record. In contrast to dual purpose excursions, the Board found that because Sumner's trip to Council Grove, as stipulated, was a purely personal trip, it had no proven benefit to his employer and, therefore, was not compensable.

The Board further rejected the Claimant's contention that the injury was compensable because Sumner was, in effect, on duty at all times in that he was responsible for both the truck and the load. In addition, the Board declined to apply the special hazard exception to the "going and coming" rule, finding that Kansas courts have never held that the mere act of driving a semi-truck constitutes a special risk or hazard which would fall within that exception.

The two dissenting Board members would have affirmed the ALJ's award and emphasized Meier's acknowledgment that, if Sumner was on his way home to stay overnight, the accident would be compensable under the Kansas Workers Compensation Act. The dissenters agreed with the ALJ that it was "more probably true than not that the decedent was headed home for the day when the fatal accident occurred" and that the accident was, therefore, compensable.

## Court of Appeals' Decision

The Claimant appealed the Board's reversal of the ALJ's award of benefits and essentially presented two arguments whether: (1) the Board ignored the evidence establishing that Sumner was on

his way home to stay at the time of the accident, and (2) the employer's permission to Sumner's going home made the accident compensable. See *Sumner v. Meier's Ready Mix, Inc., & Zurich U.S. Ins. Co.*, 34 Kan. App. 2d 850, 126 P.3d 1127 (2006). The panel rejected the Claimant's contention that Meier's permission or acquiescence in Sumner's deviation from the delivery route made the accident compensable, noting that this was a one-time event. The panel further declined to address the Claimant's contention that the semi-truck was a special risk or hazard under the special risk exception to the "going and coming" rule, observing that Sumner's injury occurred on a public highway. 34 Kan. App. 2d at 855-56.

The Court of Appeals, however, was persuaded by the Claimant's contention that the Board ignored evidence. As a threshold question, the panel stated that, although the standard of review required it to defer to the Board's factual findings, the case presented a question of whether the Board's decision was supported by substantial competent evidence. 34 Kan. App. 2d at 854. The panel determined that the Board ignored circumstantial evidence that indicated Sumner was near the end of his 12-hour shift when he started homeward; thus, the panel concluded that there would have been no time for him to make the Junction City delivery that day. 34 Kan. App. 2d at 855-56.

Consequently, the Court of Appeals held that Sumner's trip fell within the exception to the "going and coming" rule, which provides that one's injury is compensable when travel upon public roadways is an integral or necessary part of his or her employment. See 34 Kan. App. 2d at 856; *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 899 P.2d 1058 (1995). The panel stated: "Going home at the end of a workday is always personal. However, when the evidence indicates that an employer's policy is to allow drivers to take company trucks home, it furthers the employer's interests and is an exception to the 'going and coming' rule." 34 Kan. App. 2d 850, Syl. ¶ 7. The Board's decision was reversed.

## ANALYSIS

Meier's contends the Court of Appeals erred in reversing the Board's finding that Sumner was not entitled to workers compen-

sation benefits because his injuries did not arise from or during the course of his employment. As all of the parties and the Court of Appeals agree, appellate review of the question of whether an accident arises from or occurs in the course of employment is governed by the "substantial competent evidence" standard of review. *Foos v. Terminix*, 277 Kan. 687, 692, 89 P.3d 546 (2004).

Even though the Court of Appeals panel correctly cited the standard of review, Meier's argues that the panel failed to properly apply the standard and instead reweighed the evidence. This is the only issue subject to our review. To analyze whether the panel correctly applied the standard of review, we must consider (1) the law which frames the issue of whether an injury arises out of or in the course of employment; (2) the applicability of the substantial competent evidence standard in the context of that issue; and (3) the application of the standard in this case.

### *Out of and In the Course of Employment*

The Claimant had the burden to prove the conditions on which Sumner's claim was based in order to prove the workers compensation claim. *Speer v. Sammons Trucking*, 35 Kan. App. 2d 132, 137, 128 P. 3d 984 (2006) (claimant has the burden of proof to establish that he or she is entitled to compensation by proving the conditions on which the right depends by a preponderance of credible evidence). A general requirement for establishing the claim is to prove a "personal injury by accident arising out of and in the course of employment." K.S.A. 2005 Supp. 44-501(a).

A leading treatise summarizes the meaning of the phrase "course of employment" by stating: "An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." 1 Larson's Workers' Compensation Law § 12, p. 12-1 (1999); see *Kindel v. Ferco Rental, Inc.*, 258 Kan. at 278; *Hormann v. New Hampshire Ins. Co.*, 236 Kan. 190, 197-98, 689 P.2d 837 (1984).

One exclusion to the "arising out of and in the course of employment" language in the Workers Compensation Act is the "go-

ing and coming" rule found in K.S.A. 2005 Supp. 44-508(f), which provides in pertinent part:

"The words 'arising out of and in the course of employment' . . . shall not be construed to include injuries to the employee occurring while the employee is on the way to assume the duties of employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

The "going and coming" rule is based upon the premise that, while on the way to or from work, the employee is subjected only to the same risks or hazards as those to which the general public is subjected. Therefore, such risks are not causally related to the employment. *Thompson v. Law Offices of Alan Joseph*, 256 Kan. 36, 46, 883 P.2d 768 (1994). Thus, an employee will be denied compensation under the Act if his or her injuries fall within the "going and coming" rule.

However, Kansas recognizes exceptions to the "going and coming" rule, one of which involves the employee's traveling upon public roadways as an integral or necessary part of the employment. *Estate of Soupene v. Lignitz*, 265 Kan. 217, 223, 960 P.2d 205 (1998); *Kindel*, 258 Kan. at 277. Such travel has been described as an intrinsic part of the job. Sometimes custom or usage has made travel an element of the employment, and courts have held that such traveling furthers the purposes of the employer. See, *e.g., Bell v. A.D. Allison Drilling Co.*, 175 Kan. 441, 264 P.2d 1069 (1953) (driller customarily drove to procure his drilling crew); *Blair v. Shaw*, 171 Kan. 524, 233 P.2d 731 (1951) (travel to annual auto mechanics' examination was custom of employer and implicitly expected of employee mechanics); *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 285 Pac. 536 (1930) (traveling salesman). This traveling exception is the one under which the Court of Appeals placed Sumner's travel on the date of his fatal accident.

A case illustrating the traveling exception, *Messenger v. Sage Drilling Co.*, 9 Kan. App. 2d 435, 437-38, 680 P.2d 556, *rev. denied* 235 Kan. 1042 (1984), was discussed by the Court of Appeals panel in this case. In *Messenger*, the employee's death in a truck accident, which occurred on his way home from a distant oil and gas drilling site, was covered under the Workers Compensation Act. The *Mes-*

*senger* court held the employee's travels must further the interests of the employer and that the travel at issue in that case was an integral and necessary part of the employment which benefitted the employer.

Citing *Messenger*, the Court of Appeals panel rejected Meier's argument that Sumner's travel did not fall under the exception to the "going and coming" rule because he was dealing with a personal emergency at the time of the accident. The panel noted that the pivotal issue was whether Sumner was going to stay the night at home with the loaded truck. If he was, the trip furthered his personal interests and also served Meier's business interest.

A trip which serves both a personal purpose and a business purpose, in that the performance of the service for the employer would have caused someone else to have taken the trip even if it had not coincided with the personal journey, is often referred to as a "dual purpose" trip. A dual purpose trip is generally considered to be within the course of employment. 1 Larson's Workers' Compensation Law § 16.02; see also *Smith v. Winfield Livestock Auction, Inc.*, 33 Kan. App. 2d 615, 619, 106 P.3d 94 (2005). However, the dual purpose rule does not extend to factual situations where the business errand would not have been undertaken if the personal errand had been abandoned or postponed. *Tompkins v. Rinner Construction Co.*, 194 Kan. 278, 398 P. 2d 578 (1965). See 1 Larson's Workers' Compensation Law § 16. Additionally, when an employee takes a clearly identifiable side-trip, thereby deviating from the business route, the employee steps beyond the course of employment and toward his or her personal objective. 1 Larson's Workers' Compensation Law § 17.03[1]. *Reinstein v. McGregor Land & Livestock Co.*, 126 Idaho 156, 879 P.2d 1089 (1994); but see *IBM Corp. v. Workers' Comp. Appeals Bd.*, 77 Cal. App. 3d 279, 282, 142 Cal. Rptr. 543 (1978); *Hobgood v. Anchor Motor Freight*, 68 N.C. App. 783, 316 S.E.2d 86 (1984).

In Kansas, the deviation must be so substantial that the employee is deemed to have abandoned any business purpose.

"A deviation from the employer's work generally consists of a personal or non-business-related activity. The longer the deviation exists in time or the greater it varies from the normal business route or in purpose from the normal business

objectives, the more likely that the deviation will be characterized as major. *In the case of a major deviation from the business purpose, most courts will bar compensation recovery on the theory that the deviation is so substantial that the employee must be deemed to have abandoned any business purpose* and consequently cannot recover for injuries received, even though he or she has ceased the deviation and is returning to the business route or purpose." (Emphasis added.) *Kindel,* 258 Kan. at 284.

An errand which represents an abandonment of any business purpose is demonstrated in *Woodring v. United Sash & Door Co.,* 152 Kan. 413, 103 P.2d 837 (1940). There, this court addressed a situation where a traveling salesman's personal errand resulted in an accident and injury which did not arise out of and in the course of his employment. The salesman operated from Salina and traveled to surrounding cities on his employer's business. On one occasion, the employer directed the salesman to meet a man in Enterprise, about 30 miles east of Salina, to obtain measurements for special jambs and window frames. The salesman went out of his way to pick up three friends, and then they stopped in Enterprise. Finding that the employer's client was actually 5 or 6 miles away in Abilene, the salesman made no further effort to attend the meeting and, instead, took his friends to a local drinking establishment. The salesman was injured when his car overturned during an accident on the way home to Salina. 152 Kan. at 413-14.

The *Woodring* court noted that, had the salesman merely taken a few guests along on a business errand, their company would not have affected his right to compensation. However, under the facts, the salesman's business errand was finished or abandoned when he pursued his own pleasure. Therefore, "there is no theory of law or of justice which would impose on his employer the obligation to pay compensation for any injury sustained by the workman." 152 Kan. at 418; see also *Pflug v. Roesch & Klinck,* 229 App. Div. 54, 240 N.Y.S. 740 (1930), *aff'd* 256 N.Y. 564, 177 N.E. 142 (1931) (where employee's errand at time of accident was for recreation and social enjoyment, risk of injury was personal).

In contrast, *Kindel* illustrates a factual situation where the business purpose was not fully abandoned and had clearly been resumed at the time of the accident. In that case, Kindel and other

employees were expected to live out of town during the week and were transported to a remote job site in a company pickup truck driven by a company supervisor. On the evening in question, Kindel and several other employees went to a strip club for a few hours after work. Kindel was killed in an accident while being driven home in the company truck by his supervisor, who was inebriated. 258 Kan. at 274.

The Board determined that Kindel's death arose out of and in the course of his employment, noting that the employee's trip to and from Sabetha, absent the detour, would have been considered part of Kindel's employment. Consequently, the Board found that the death resulted from the combined personal and work-related risks. 258 Kan. at 275-76.

On appeal, this court applied the substantial competent evidence standard of review and held there was substantial competent evidence to support the Board's finding that Kindel's death occurred during the course of his employment. 258 Kan. at 284-85. The *Kindel* court observed that, although Kindel spent 4 hours at the club, the distance of the deviation was less than 1/4 of a mile, and Kindel was killed after resuming his route home as a passenger in a company vehicle. Further, the deceased was killed while engaged in an activity contemplated by his employer. 258 Kan. at 284. The *Kindel* court noted there was evidence to support a conclusion that the employee's deviation was minor and a conclusion that the employee was returning home in the company vehicle at the time of the accident.

In addition to *Kindel,* the Court of Appeals panel in this case cited *Foos v. Terminix,* 277 Kan. 687, as an example of where an employee who was returning home was covered by the Act. Foos was an exterminator who was assigned a vehicle for a route that included several towns. He performed some exterminations in the morning, and then took a break for a "hole-in-one" contest at a sports complex. Although he planned to do some work that afternoon, Foos did not perform those jobs. Later that evening, while returning home in the company truck, Foos was injured and suffered head trauma sufficient to cause permanent severing of his olfactory nerves. 277 Kan. at 689. This court held that substantial

competent evidence supported the Board's finding that, even if Foos had deviated from his employment for a substantial period of time, he was on a direct route home on a public highway, which was an activity contemplated by his employer and an intrinsic part of the employment. 277 Kan. at 692. Thus, Foos was acting within the course and scope of his employment at the time of the accident. See also, *e.g.*, *Newman v. Bennett*, 212 Kan. 562, 512 P.2d 497 (1973) (fatal auto accident to oil field pumper, who was employed to service six separately owned oil and gas leases and who was traveling from one lease to another in his pickup truck in which he carried employers' tools and supplies, arose out of and in course of employment); *Bell v. Allison Drilling Co.*, 175 Kan. 441, 264 P.2d 1069 (1953) (oil well driller fatally injured in auto accident while engaged in effort to hire drilling crew died as result of accident arising out of and in course of employment).

### Substantial Evidence Standard

Each of these cases illustrate the inherently factual nature of the determinations of whether a business errand has been abandoned and whether a deviation is major, determinations which lead to the ultimate consideration of whether an accident arises out of or in the course of employment. Repeatedly, this court has recognized that resolution of the question of whether an injury arises out of and in the course of employment is a question of fact. *Foos v. Terminix*, 277 Kan. at 691; *Newman v. Bennett*, 212 Kan. 562, Syl. ¶ 3. As we stated in *Kindel*, "[w]hether there was a deviation [from the course of employment], and if that deviation had terminated, is a question of fact to be determined by the administrative law judge or the Workers Compensation Board." *Kindel*, 258 Kan. at 284.

As this statement reflects, initially the ALJ hears the evidence and makes the factual determination of whether the injury at issue is compensable. Since 1993, the Board has authority to review the ALJ's decision for questions of both law and fact. K.S.A. 2005 Supp. 44-555c(a) ("The review by the board shall be upon questions of law and fact as presented and shown by a transcript of the evidence and the proceedings as presented."). The Board is statutorily em-

powered and, in fact, is required, to make findings of fact. K.S.A. 2005 Supp. 44-555c(k).

The Board's findings of facts, along with the required conclusions of law, are appealable to the Court of Appeals, where review is limited in accordance with the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, K.S.A. 2005 Supp. 44-556. See *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.*, 268 Kan. 33, 34-35, 991 P.2d 406 (1999). The Court of Appeals and, in turn, this court on review of the Court of Appeals decision do not have the same power as the ALJ and Board to make findings of fact; rather, appellate review for questions of fact is limited to determining whether the Board's findings of fact are supported by substantial competent evidence. *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 191, 62 P.3d 236 (2003).

Substantial evidence possesses something of substance from which the issue can be reasonably resolved. An appellate court reviews the evidence in the light most favorable to the prevailing party before the Board and refrains from reweighing the evidence or assessing the credibility of witnesses. *Neal v. Hy-Vee, Inc.*, 277 Kan. 1, 16-17, 81 P.3d 425 (2003). Findings supported by substantial evidence will be upheld on appeal even though evidence in the record would have supported contrary findings. *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 705, 35 P.3d 788 (2001); *Chowning v. Cannon Valley Woodwork, Inc.*, 32 Kan. App. 2d 982, 989, 93 P.3d 1210 (2004).

### Application of Standard to Record

In this case, the majority of the Board, based on the evidence in the record, determined Sumner was not acting out of and in the course of his employment at the time of the accident on K-177. The Board concluded that Sumner was, instead, running a personal errand and had substantially deviated from his employment. According to the majority, the record was unclear regarding whether Sumner intended to keep the load in Council Grove overnight and deliver it the next day. Because the majority of the Board found there was "no way to ascertain how long decedent would have been

in Council Grove and whether he would have had time that afternoon to deliver the load to Junction City as originally planned," the majority reversed the ALJ's award of benefits.

In reversing the Board's determination and in holding that Sumner's trip home to Council Grove fell within the traveling exception to the "going and coming" rule, the Court of Appeals panel observed that Sumner routinely kept the company truck at home between shifts and concluded that, in this particular instance, "there was no time to make the delivery to Junction City that day." 34 Kan. App. 2d at 856. The Court of Appeals held: "The [Board's] conclusion that there was no evidence indicating how long Sumner planned to stay in Council Grove ignores the circumstantial evidence that indicated he was near the end of his 12-hour shift." 34 Kan. App. 2d at 854-55.

Meier's correctly contends that the Board considered the issues surrounding all the circumstantial evidence. Indeed, substantial evidence supported the Board's findings, namely: (1) Sumner could have exceeded a 12-hour workday; (2) the dispatcher believed Sumner would have had sufficient time to deliver his load to Junction City; (3) Meier's wanted Sumner to make the delivery that day if at all possible; (4) there was no evidence regarding the nature of the personal errand; and (5) there was no indication in the record as to how long the emergency would have taken to resolve.

In other words, while the Court of Appeals was correct that there was circumstantial evidence that Sumner might have stayed in Council Grove for the night and continued the business trip the next day, there was also substantial competent evidence that the side trip to Council Grove was purely personal and did not serve the interest of the employer. Thus, the issue was contested and evidence supported both positions. Consequently, this is not a situation where the Board ignored undisputed evidence. See *Overstreet v. Mid-West Conveyor Co., Inc.*, 26 Kan. App. 2d 586, 589, 994 P.2d 639 (1999) (finder of fact cannot disregard undisputed evidence which is not improbable, unreasonable, or shown to be untrustworthy). Rather, the Board weighed the evidence and found the Claimant had failed to establish by a preponderance of the evidence that the side trip furthered Meier's interest.

Furthermore, there was evidence to support the Board's conclusion that there had been a substantial deviation from the business purpose. If Sumner had not been involved in the personal errand on K-177, he would have continued west on I-70 to Junction City, which was approximately 15 miles west of the intersection at which he turned south. The distance from Council Grove to Junction City is about 45 miles. Moreover, the parties stipulated that Sumner was on a purely personal errand with no business purpose at the time of the accident.

Hence, substantial competent evidence supported the Board's findings. Consequently, the Board's decision should have been upheld. The Court of Appeals' reliance on contradictory evidence amounted to a reweighing of evidence and improper application of the substantial competent evidence standard of review.

The Court of Appeals' decision is reversed and the decision of the Workers Compensation Board is affirmed.