NOT DESIGNATED FOR PUBLICATION

No. 119,799

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THIEN TRAN,
*Appellant*,

v.

ANGELLO FIGUEROA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed April 24, 2020. Reversed and remanded.

*James M. Roswold* and *Kyle P. Sollars*, of Kansas City Accident Injury Attorneys, P.C., of Kansas City, Missouri, for appellant.

*Jessica R. Beever*, of Lee's Summit, Missouri, for appellee.

Before BUSER, P.J., GREEN and MALONE, JJ.

PER CURIAM: Thien Tran filed a lawsuit against Angello Figueroa seeking damages for personal injuries he sustained when Figueroa negligently struck Tran with his car in the parking lot where the two men worked. Tran and Figueroa were coworkers at Hendrick Automotive Group (Hendrick) when the incident occurred. Figueroa moved for summary judgment on the basis that he is immune from liability under the fellow servant provision of the Kansas Workers Compensation Act (the Act), K.S.A. 44-501 et seq. The district court agreed with Figueroa and granted him summary judgment, finding that Tran's compensation under the Act was the exclusive remedy for his injuries.

1

But whether an employee was acting within the course and scope of his or her employment is a question of fact to be determined by a trier of fact unless the evidence shows that only one conclusion can be drawn from the facts. Here, the evidence presented to the district court indicates that reasonable persons could reach different conclusions on whether the incident arose out of and in the course of Figueroa's employment. Because genuine issues of material fact remain to properly resolve the issue, we find the district court erred in granting summary judgment in favor of Figueroa.

FACTUAL AND PROCEDURAL BACKGROUND

On May 1, 2017, Tran filed a petition for damages against Figueroa stemming from an incident on the Hendrick parking lot. Both Tran and Figueroa were employees of Hendrick and were working on the day of the incident. In the petition, Tran alleged he was walking in the Hendrick parking lot when Figueroa backed his personal vehicle into a parking space after returning from an on-site car wash and "carelessly, recklessly and negligently struck" Tran and knocked him to the ground. Tran received compensation for his injuries under the Act. Figueroa moved for summary judgment on the basis that Tran's claim fell under the Act's fellow servant immunity provision which prohibits an injured worker from recovering damages for an on-the-job injury caused by a fellow employee in which compensation is recoverable under the Act.

In the summary judgment pleadings, the parties agreed to the following facts. Both Tran and Figueroa were employees of Hendrick and were working on May 2, 2015. Tran was employed as a sales associate and Figueroa was a service technician. Late in the afternoon, Figueroa drove his personal vehicle from a parking space on Hendrick's parking lot to Hendrick's on-site car wash. Figueroa washed his vehicle and drove it back to the main building. While Figueroa was backing into a parking space he struck Tran. Both parties agreed the sole issue was whether Figueroa was acting within the course and scope of his employment when the incident occurred—specifically, whether Figueroa

2

was fulfilling work duties or whether he was engaged in a personal task unrelated to his employment when he took his personal vehicle through the car wash.

Figueroa argued that he was within the course and scope of his employment when the incident occurred and, even if his actions were not work related, they were only a minor deviation which would not take him out of the scope of his employment. Thus, Figueroa argued he was still considered an employee under the Act. But Tran argued that Figueroa's actions were a deviation from his job duties and the deviation was so substantial as to take Figueroa outside the course and scope of employment.

The district court held a hearing on the summary judgment motion. The district court found that both Tran and Figueroa were on-the-clock employees when the incident occurred. The district court found that it did not matter whether Figueroa took a minor or major deviation from his employment because the applicable statute focused only on the *plaintiff's* employment status. Even if a deviation analysis was necessary for Tran to have a cause of action against Figueroa, the district court found that Figueroa had returned to his employment at the time of the incident. The district judge stated:

> "The statute focuses on the plaintiff and not the defendant. It is if the plaintiff is within the scope of his employment and it is not if the defendant is within the scope of his employment. Even if that were, the defendant was within the scope of his employment.
>       . . . .
>       "So what happened is the defendant drove his car, got it washed, drove it back out, parked it and then while backing it into the space is when he hit the car salesman, i.e., the plaintiff in this case. He was back in his employment. He was a tech for the company, and I don't know what it was—why he was doing it then or anything like that. What I do know is that both of you talked about a minor deviation and a major deviation. I think that has zero input as to what this statute focuses on. Our statute focuses on the person who is injured and their roles. This is not an intentional act done by Mr. Figueroa nor was it anything for us to try to distinguish whether this was a minor deviation or major deviation.

3

. . . .

"But more importantly, like I said, the focus has to be on the person who is injured according to the statute and not the person who may have injured him in this particular case. For those reasons I am going to grant the summary judgment."

The district court later signed a journal entry granting summary judgment in favor of Figueroa, finding that Tran was barred from pursuing a civil lawsuit by the exclusive remedy provision under the Act. Tran timely filed a notice of appeal.

ANALYSIS

On appeal, Tran claims the district court erred by granting summary judgment in favor of Figueroa. More specifically, he argues that a court must consider the defendant's employment status, not the plaintiff's, in order to determine whether the Act's fellow servant immunity provision applies. As such, Tran contends that genuine issues of material fact remain as to whether Figueroa was acting in the course and scope of his employment when the incident occurred. Tran also briefly argues that the personal comfort doctrine does not apply in this case.

Figueroa contends that the district court did not err by granting summary judgment in his favor. He argues that the district court correctly applied the exclusive remedy provision to bar Tran's tort claim based on the clear and unambiguous language of the Act. He also argues that the district court correctly applied the exclusive remedy provision because any deviation by Figueroa from his job duties was minor. He argues that the personal comfort doctrine provides guidance in this case and supports his claim that he was acting within the scope of his employment when the incident occurred.

Our standard of review provides:

"'"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

Both parties agree that the relevant statute here is K.S.A. 2018 Supp. 44-501b(d) which states:

"Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury, whether by accident, repetitive trauma, or occupational disease, for which compensation is recoverable under the workers compensation act nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer."

This subsection, known as the fellow servant immunity provision, states that a co-employee is immune from liability for an accident that injures another employee for which compensation is recoverable under the Act. K.S.A. 2018 Supp. 44-508(f)(2)(B) provides that an injury is compensable only if it arises out of and in the course of employment. Here, the district court determined that an analysis of whether the tortfeasor co-employee was acting within the scope of his employment was not relevant to whether the fellow servant immunity provision applied. The district court found that summary

5

judgment was appropriate because the statute only requires a court to consider whether the plaintiff was acting within the course and scope of his employment.

But in *Scott v. Hughes*, 294 Kan. 403, 415, 275 P.3d 890 (2012), our Supreme Court made it clear that the tortfeasor co-employee was the only person whose course and scope of employment mattered for determining the application of fellow servant immunity. The *Scott* court stated: "If an employee is injured by a coworker while the coworker is acting in the course and scope of his or her employment, then fellow servant immunity under K.S.A. 44-501(b) applies." 294 Kan. at 415. "If, on the other hand, an employee is injured by the tort of a coworker while the coworker is not acting in the course and scope of his or her employment, then fellow servant immunity under K.S.A. 44-501(b) does not apply." 294 Kan. at 415. The *Scott* court stated: "Further, and critically important, it was essential for the parties and the district judge to understand that the *only* person whose course and scope of employment mattered for determination of the existence of fellow servant immunity was [the defendant]." 294 Kan. at 421.

Thus, it is clear that the district court must analyze whether the tortfeasor coworker—in this case, Figueroa—was acting within the course and scope of his or her employment before determining whether fellow servant immunity applies. Here, the district court erred as matter of law in refusing to perform this analysis.

*Do genuine issues of material fact exist as to whether Figueroa was acting within the scope of his employment when the incident occurred?*

On appeal, neither party argues that the district court erred as a matter of law in refusing to perform the proper analysis. Instead, both parties focus on the correct statement of law enunciated in *Scott*—whether the facts conclusively show that Figueroa was acting within the course and scope of his employment when the incident occurred.

6

Both parties admit that Tran and Figueroa were employees and were both working on the day of the incident. But Tran argues that genuine issues of material fact exist as to whether Figueroa's use of his personal vehicle to perform a prohibited activity took him out of the course and scope of his employment when the incident occurred.

Kansas has a definition for "arising out of and in the course of employment":

> "[A]n injury arises 'out of' employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase 'in the course of' employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service. [Citations omitted.]'" *Scott*, 294 Kan. at 416 (quoting *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 278, 899 P.2d 1058 [1995]).

Courts have held that "the two phrases arising 'out of' and 'in the course of' employment, as used in our [Act], have separate and distinct meanings; they are conjunctive, and each condition must exist before compensation is allowable." *Kindel*, 258 Kan. at 278. Courts have further emphasized work that has expressly been forbidden can take an employee out of the scope of employment.

> "[A]n accident which occurs while an employee is not actually performing his job may nonetheless arise out of and in the course of employment. On the other hand, if an employee is performing work which has been forbidden, as distinguished from doing his work in a forbidden manner, he is not acting in the course of his employment." *Wells v. Anderson*, 8 Kan. App. 2d 431, 434, 659 P.2d 833 (1983).

The *Wells* case is similar to our facts. In that case, Wells and Anderson were co-employees at a truck stop. While working one night, Anderson drove his personal vehicle into the service bay to change the anti-freeze. Anderson spent 20 minutes working on his personal vehicle, but alternated between tending to his vehicle and pumping gas for

7

customers during that time. Just as Anderson finished filling his radiator with anti-freeze, he turned on the ignition. Because the car was already in gear, the vehicle moved forward and pinned Wells between two vehicles.

Wells sued Anderson for damages, but Anderson asserted the fellow servant immunity defense arguing that his co-employee status conclusively barred Wells' negligence claim. But the *Wells* court held a literal definition of "co-employee" was too broad and that the "mere co-employee status is not sufficient for immunity. There must be some connection between the defendant's acts and his employment for immunity to attach." 8 Kan. App. 2d at 433-34.

The *Wells* court reviewed whether Anderson's conduct was within the course and scope of his employment. Under company policy, employees were forbidden to work on their own vehicles on company time. But it was custom and practice that employees could work on their personal vehicle so long as it did not interfere with company business. Anderson testified that while he was working on his vehicle in the service bay, he could not always see what was happening in the front of the store. So even though Anderson claimed he was also attending to customers during the time he was working on his vehicle, it was unclear whether his conduct fell within the forbidden work category or whether his conduct fell within the accepted customs and practices of the employment. Under these facts, the *Wells* court found summary judgment was inappropriate because the record did not conclusively show that Anderson's actions arose out of and in the course of his employment. 8 Kan. App. 2d at 434-35.

Returning to Tran's claim, this court must determine whether the evidence conclusively shows that Figueroa's actions arose out of and in the course of his employment with Hendrick when he injured Tran with his vehicle. As Tran argues, the record in this case, considered in the light most favorable to Tran, shows three genuine issues of material fact:  (1) whether Hendrick's company policy allowed employees to use

8

the car wash for personal vehicles while they were on the clock and after hours; (2) whether managers and employees used the car wash regardless of any contrary company policy; and (3) whether Figueroa's unique method of compensation somehow affected whether he was actually working at the time he washed his car.

First, even Figueroa's appellate brief admits that "[t]here is a dispute about Hendrick's policies regarding use of its carwash for personal vehicles." Figueroa attested in an affidavit that he would frequently move and park vehicles on Hendrick's property and run vehicles through the car wash as part of his job as a service technician. One of Figueroa's managers, Steven Shewmaker, confirmed these duties were part of Figueroa's job, but operating and moving a personal vehicle around the premises was not a part of Figueroa's job. Shewmaker also stated that employees were not allowed to use the car wash on the job, and that they would have to wait until after hours to use it. In contrast, one of Figueroa's other managers, Jon Howell, testified in a deposition that company policy prohibits employees from using the car wash on personal vehicles, both on company time and on personal time. Howell stated he had never seen any employee take a personal vehicle through the car wash and it was not common for employees to do so.

Second, there is conflicting testimony on whether managers and employees frequently used the car wash when business was slow regardless of company policy. Tran testified it was not common for employees to use the car wash on their personal vehicles, but he stated that he had used the car wash on previous occasions. When asked if there were rules against it, Tran stated, "The managers really don't care as long as it's not busy." Figueroa stated he was not aware of this policy and that he ran his personal vehicle through the car wash whenever he wanted to do so without reprimand—almost 20 times a month. Thus, it is unclear whether employees were allowed to use the car wash for their personal vehicles only when business was slow. If the employees were allowed to do so, there is also a dispute about whether business was actually slow that day. Figueroa and Tran had different job titles, thus, it may have been busy for Tran, but not Figueroa.

9

Third, Tran disputes whether Figueroa was actually being paid when the incident occurred because Figueroa was generally paid by commission upon completing a service job rather than by the hour. Both managers testified that Figueroa was paid on commission for service jobs he completed. Figueroa would be paid based on the number of hours recommended for each job, regardless of how long it actually took Figueroa to complete the job. Figueroa stated he was required to stay the full length of his shift, even if he did not have any service jobs to complete. When a service technician is not working on a service job, they are expected to be keeping their service bays clean, organizing their areas, or completing online certification modules. Employees were expected to clock out when taking their breaks. On the day of the incident, Figueroa stated, he did not clock out and his pay was not reduced for using the car wash.

Thus, under *Scott*, it is possible that the incident did not arise out of Figueroa's employment because Shewmaker stated that running a personal vehicle through the car wash is not part of Figueroa's job duties. Further, there was testimony that if Figueroa was not working on a service job, he should be organizing his area or completing online certification modules. Both managers testified that it was not common for employees to use the car wash on company time. Conversely, the incident could have happened in the course of Figueroa's employment with Hendrick because he was using the company car wash, he was on the clock, he did not get reprimanded for his actions, and he got paid for his full shift that day. Thus, genuine issues of material fact remain.

If a court determines that an employee was not attending to business objectives or the activity was more personal in nature, then the employee will be said to have deviated from his or her work duties. *Sumner v. Meier's Ready Mix, Inc.*, 282 Kan. 283, 290-91, 144 P.3d 668 (2006). "[W]hen an employee takes a clearly identifiable side-trip, thereby deviating from the business route, the employee steps beyond the course of employment and toward his or her personal objective." 282 Kan. at 290. A minor deviation would

10

keep the employee within the course and scope of employment, but a major deviation would take them out of the course and scope of employment. 282 Kan. at 290-91.

> "'A deviation from the employer's work generally consists of a personal or nonbusiness-related activity. The longer the deviation exists in time or the greater it varies from the normal business route or in purpose from the normal business objectives, the more likely that the deviation will be characterized as major. *In the case of a major deviation from the business purpose, most courts will bar compensation recovery on the theory that the deviation is so substantial that the employee must be deemed to have abandoned any business purpose* and consequently cannot recover for injuries received, even though he or she has ceased the deviation and is returning to the business route or purpose. (Emphasis added.)'" 282 Kan. at 290-91 (quoting *Kindel*, 258 Kan. at 284).

Assuming Figueroa's actions constituted a deviation, a material question remains as to whether Figueroa's deviation was minor or major enough to take him out of the scope of employment. Figueroa argues he drove his vehicle to the car wash at 4:08 p.m. and returned to the parking space at 4:12 p.m. Thus, Figueroa argues any deviation was only a few minutes which would support a finding that it was minor. In contrast, Tran stated that the incident occurred around 4:20 p.m. and Figueroa clocked out that day around 4:50 p.m. Tran disputes how long the actual deviation was and whether Figueroa ever returned to his work duties after using the car wash. Tran asserts that even though Figueroa was returning to his employment when he was parking the vehicle, abandonment of the deviation does not automatically bring the employee back into the scope of employment. Thus, material facts exist as to how long the deviation lasted and whether Figueroa ever returned to his scope of employment.

"[W]hether an employee is acting within the scope of his or her employment is generally a question of fact, but if only one reasonable conclusion can be drawn from the evidence, the court can decide the issue as a matter of law." *Wayman v. Accor N. Am., Inc.*, 45 Kan. App. 2d 526, 533, 251 P.3d 640 (2011). Here, the facts in the record show

11

that more than one conclusion could reasonably be drawn from the evidence presented to the court at this stage of the proceedings. As a result, whether Figueroa was acting within the course and scope of his employment when the incident occurred is a question of fact that should be evaluated by the trier of fact. Summary judgment was inappropriate.

Finally, Figueroa contends the personal comfort doctrine should be considered in determining whether he left the course and scope of his employment. Figueroa raised this argument below, but the district court did not address it at the hearing. Tran argues that the personal comfort doctrine does not apply in this case.

The personal comfort doctrine recognizes that an employee does not leave the scope of employment by taking breaks to attend to personal comfort. *Gould v. Wright Tree Serv., Inc.*, No. 114,482, 2016 WL 2811983, at * 6 (Kan. App. 2016) (unpublished opinion). *Gould* discussed the personal comfort doctrine in the context of a smoke break, bathroom breaks, and coffee breaks but noted that when accidental injuries occur on an authorized break, there is no deviation from employment. Figueroa's act of washing his car during work hours is not the same as taking a cigarette, bathroom, or coffee break. We agree with Tran that the personal comfort doctrine does not apply in this case.

*Conclusion*

The record reflects material facts remain in dispute as to whether Figueroa was acting in the course and scope of employment for purposes of whether the fellow servant immunity provision applies. For these reasons, we conclude the district court erred in granting summary judgment in favor of Figueroa and remand for further proceedings.

Reversed and remanded.