No. 102,690

BONNIE JEAN BRUNGARDT SCOTT, surviving spouse of JEFFERY WADE SCOTT, and the ESTATE OF JEFFERY WADE SCOTT, by and through its Administrator, BONNIE JEAN BRUNGARDT SCOTT, JEFFREY WAGNER, and ADAM STEIN, *Appellees*, v. CHRISTOPHER HUGHES, *Appellant*.

(275 P.3d 890)

Opinion filed May 4, 2012.

*Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *William L. Townsley, III*, of the same firm, was with him on the briefs for appellant.

*Scott J. Mann*, of Mann Law Offices, LLC, of Hutchinson, argued the cause, and *Michael J. Wyatt*, of the same firm, and *Matthew L. Bretz*, of Bretz Law Offices, LLC, of Hutchinson, and *Mitchell W. Rice*, of the same firm, were with him on the brief for appellees.

The opinion of the court was delivered by

BEIER, J.: This is an appeal by defendant Christopher Hughes after a jury verdict against him in this negligence action. Hughes was the driver in a one-car accident that killed passenger Jeffery Wade Scott and injured passengers Jeffrey Wagner and Adam Stein. At the time of the accident, the four were traveling together to work on a drilling crew for employer Duke Drilling, Inc. (Duke Drilling). Hughes challenges the district judge's decision that Hughes was not immune from suit as a fellow servant under workers compensation law, as well as rulings on the admission of evidence and jury instructions. Because we resolve this case in favor of Hughes on the first issue, we do not reach the second and third issues.

### Factual and Procedural Background

This appeal is the second involving Hughes and plaintiff Bonnie Jean Brungardt Scott, Scott's surviving common law wife. The first was interlocutory; Hughes appealed a denial of summary judgment in his favor and a grant of partial summary judgment in favor of Brungardt Scott. We reversed and remanded. *Scott v. Hughes*, 281 Kan. 642, 132 P.3d 889 (2006). The following review of the entire factual and procedural background of this appeal puts our earlier decision and the issues now before us in appropriate context.

The accident giving rise to this action occurred in July 2003 in Stafford County. Criminal charges were filed against Hughes as a result, leading ultimately to his no contest plea to possession of methamphetamine and vehicular homicide.

Brungardt Scott filed a workers compensation claim and reached a settlement of that claim, as did Wagner and Stein. Hughes also filed a workers compensation claim. Duke Drilling challenged Hughes' right to recover because it alleged that he was intoxicated at the time of the accident.

In addition to the workers compensation proceedings, Brungardt Scott, Wagner, and Stein each filed a civil lawsuit against Hughes.

Hughes sought summary judgment in Brungardt Scott's action, arguing that it was barred by his fellow servant immunity under the Kansas Workers Compensation Act. Brungardt Scott responded and filed a cross motion. She argued that Hughes was ineligible for workers compensation because of his intoxication at the time of the accident and thus unprotected from civil suit by fellow servant immunity.

The district judge denied Hughes' motion and granted Brungardt Scott partial summary judgment, ruling that Hughes was "not entitled to workmen's compensation benefits because his injury was contributed to by [his] use or consumption of alcohol." On Hughes' request, the judge amended his journal entry to enable interlocutory review, certifying this question: "[W]hether an individual allegedly unable to obtain workers compensation benefits by reason of intoxication thereby loses his or her statutory fellow servant immunity and is subject to civil liability in a suit brought

by a co-worker." Permission to docket the interlocutory appeal was granted, and the case was transferred to this court.

In our opinion issued April 28, 2006, we set forth the central questions posed by the denial of Hughes' motion for summary judgment: "If alcohol or drug use by Hughes would eliminate Duke Drilling's liability to him for workers compensation benefits, would it also eliminate the coemployee or fellow servant immunity he would normally enjoy under K.S.A. 44-501(b)? Would it place him instead in the position of a third-party tortfeasor subject to this civil suit for damages under K.S.A. 44-504?" *Scott*, 281 Kan. at 647.

We concluded:

"Neither *entitlement to receive* nor *actual receipt* of workers compensation benefits by a coemployee tortfeasor is required for fellow servant immunity to attach and bar a civil suit. What matters is whether that coemployee was acting within the scope and course of employment when he or she caused injury to another." *Scott*, 281 Kan. at 652.

In other words, the district judge erred by yoking together two unrelated legal concepts. The first—whether the accident arose out of and in the course of Hughes' employment, or, in the parties' equivalent formulation, whether Hughes was acting in the course and scope of his employment at the time of the accident—posed a threshold question. It must be answered affirmatively for the Act to apply and for Hughes to be protected by fellow servant immunity. The second concept—whether Hughes was eligible to recover workers compensation benefits for his own injuries, given Duke Drilling's intoxication defense to liability—was separate and independent. Its answer would not drive the answer to the first question. This meant that the denial of Hughes' summary judgment motion required reversal and remand for consideration under the correct legal framework. We wrote:

"If the district judge concludes that there is no genuine issue of material fact, *i.e.*, that there is no evidence to controvert defendant Hughes' claim that he was acting within the scope and course of his employment at the time of the accident, then he is entitled to fellow servant immunity and this wrongful death and survival suit is barred." *Scott*, 281 Kan. at 652-53.

This court also reversed "the district court's additional ruling granting partial summary judgment to Brungardt Scott on the fac-

tual issue of Hughes' consumption of alcohol or drugs and its effect on his ability to recover workers compensation benefits." *Scott*, 281 Kan. at 653. The record before us at that point contained only allegations rather than evidence about Hughes' intoxication. In the case's procedural posture on the anticipated remand, it was possible the civil case against Hughes would continue and his intoxication or lack thereof would be further litigated. We also did not address the issue of whether Scott was in the course and scope of his employment at the time of the accident, having assumed he was for purposes of a brief review of statutory provisions on workers compensation. *Scott*, 281 Kan. at 653.

On remand, the district court ordered additional discovery, and counsel for Brungardt Scott and Stein and counsel for Wagner took Hughes' deposition. A few months later, Hughes and Duke Drilling settled Hughes' workers compensation claim.

Hughes again moved for summary judgment, this time against all three plaintiffs. He argued that the material uncontroverted facts demonstrated that plaintiffs' lawsuits were barred by fellow servant immunity under the Act. Plaintiffs responded and filed cross-motions for summary judgment on the issue of whether Hughes was in the course and scope of his employment at the time of the accident.

The uncontroverted facts before the district judge, beyond those already recited above, included the following:

Hughes was the driller and crew chief, while Scott, Wagner, and Stein were members of the crew that Hughes assembled and supervised. On the date of the accident, the crew was required to be at the drilling site near Greensburg by 6:45 a.m. The drilling site was approximately 90 miles from the Great Bend area where each of the four lived. Duke Drilling did not provide the crew with lodging in Greensburg or a food stipend. The crew would work from 7 a.m. to 3 p.m. at the Greensburg site and then would return to Great Bend each day.

Consistent with the practice of oil drilling crews, crew members with valid licenses would take turns driving the crew to the job site. Duke Drilling paid the mileage expenses for one driver. Duke Drilling also paid each crew member $15 "ride time" if the drilling

site was more than 100 miles away one way. Duke Drilling did not have control or input over how the crew got to the job site. Crew members could choose to ride with Hughes or drive themselves to the site. Hourly pay did not begin until arrival at the job site.

On the day of the accident, Hughes awoke about 4 a.m. to find Scott already at his home and sleeping in Hughes' car. Hughes and Scott picked up Wagner and Stein and then traveled south on Highway 281 toward Greensburg until the accident occurred.

The district judge issued an initial order via email denying both Hughes' and plaintiffs' motions for summary judgment. He stated in part:

"The court finds under the specific instructions on the remand that there is a genuine issue of a material fact, namely [that] there is evidence to controvert defendant Hughes' claim that he was acting within the scope and course of his employment at the time of the accident. There is evidence from which a fact finder could make the determination that he was not. This is an issue that cuts both ways and there is enough evidence to persuade a fact finder that he was acting within the scope of his employment."

The judge's official filed journal entry set forth no additional factual findings or legal conclusions, and Hughes sought reconsideration for that reason. The district judge denied the motion for reconsideration without setting forth any additional factual findings or legal conclusions.

In the pretrial order, the three lawsuits brought by Brungardt Scott, Wagner, and Stein were consolidated for trial. The order also specified the following as issues of fact for trial:

"1. Whether Defendant Christopher Hughes was acting in the scope and course of his employment with Duke Drilling, Inc., at the time of the wreck[.]

"2. Whether Jeffrey Scott, Jeffrey Wagner and Adam Stein were acting in the scope and course of his employment with Duke Drilling, Inc., at the time of the wreck[.]"

The order included the following among the issues of law:

"2. Whether defendant was in the course and scope of employment when the accident occurred. (Defendant asserts that this is a question of law. Plaintiffs assert that this is a question of fact.)

"3. Whether Plaintiffs' claims are barred by the 'exclusive remedy' of workers compensation."

At trial, plaintiffs put on no witnesses. Wagner, Stein, and Hughes were called by the defense. In addition to the uncontroverted facts supporting the summary judgment motions, they gave the following additional evidence relevant to the course and scope questions on Hughes and his passengers.

Wagner testified that most work days Hughes drove to the job site. On the day of the accident, the crew was taking the most direct and shortest route to the job site. It was common practice to go from home, to the drilling site, and back again each day, although employees were also permitted to stay at the well site rather than travel to and from home. Wagner said it was not a condition of his employment that he ride with the driller or another coworker to the job site; the four had what was, in essence, a carpooling arrangement. Wagner nevertheless acknowledged that it was common in the drilling industry for a crew to ride with the driller so that everyone would arrive at the site at the same time. At the time of the accident, Wagner was asleep.

Stein agreed that a driller typically takes a crew with him to a drilling site and that this was the way it worked with Hughes and Duke Drilling. Hughes was paid for his mileage on the day of the accident. Stein's hourly wages would not begin to accrue until he arrived at the job site and began his shift. Stein testified that he could have driven himself to the work site and that it was not one of his job duties to ride with Hughes. Yet Stein would usually ride home at the end of a shift with the driller. He made other arrangements on days that he worked a double shift. At the time of the accident, Hughes was driving, and Scott was sleeping. Wagner was riding in the back, asleep, and Stein was also asleep.

Hughes testified that he was second in command at the work site, and his job included organizing the crews. The site would move to a new location every 12 to 16 days. Hughes testified that the site at the time of the accident was the first time in about 3 months in which the distance was less than 100 miles away from home. As the driller, he was told to pick up three hands and be on location on time. The crew rode together to ensure arrival at the site at the same time, which was the custom in the oil field. The driver was always paid mileage for the most direct route to the site,

and crew members were not paid for a hotel or for meals. It was not the company's practice to let workers live at the site. On the day of the accident, Hughes was paid mileage. The accident occurred on a public highway, not on Duke Drilling's property. Hughes was driving his own vehicle at the time of the accident.

On cross-examination of Hughes, plaintiffs' counsel focused on disparities between Hughes' deposition and his trial testimony. Hughes said that he did not remember his deposition testimony well because he had suffered a brain injury in the accident.

Plaintiffs' counsel pointed out that during his deposition Hughes had not listed getting the crew to the site as one of his job duties. Hughes also acknowledged that he had not been paid additional mileage for picking up crew members who were off of the direct route to the work site, and he admitted that workers could have driven themselves to the site at their own expense. Even though Hughes maintained at trial that his job as driller started at 4 a.m. when he went to pick up the crew, plaintiffs' counsel pointed out that Hughes had testified at his deposition that he had not yet started his work day and was not being paid his hourly wage at the time of the accident. Hughes testified at trial that he believed he went to the Duke Drilling yard to pick up equipment on the day of the accident, but during his deposition he had testified that he did not. Hughes admitted that he had agreed during his deposition that the foursome riding to the drilling site together was a carpool arrangement. He also admitted that it was not a part of his job description to drive to and from work. Hughes' deposition testimony and trial testimony were inconsistent on the question of whether Hughes was required to have a driver's license. His deposition testimony and trial testimony were also inconsistent on the question of whether he instructed the crew members to ride with him.

At the close of evidence, both the plaintiffs and Hughes moved for judgment as a matter of law.

On the question of whether the passengers were in the course and scope of their employment, plaintiffs argued that there was "no evidence that the plaintiffs were in the course and scope of their employment at the time of the wreck" because "[t]hey were

not paid mileage"; they "were not paid for their time"; "[t]hey were not carrying out any job duties"; and "[t]hey were asleep." Plaintiffs argued that there was "scant evidence" Hughes was in the course and scope of his employment, but they "concede[d]" that there was "some evidence on that issue." Hughes argued that he was entitled to judgment as a matter of law as an immune fellow servant because he and plaintiffs "were going to a remote long-distance drilling location for the benefit of their employer" at the time of the accident, and case precedent dictated that such travel qualified as within the course and scope of their employment.

The district judge rejected both sides' motions for judgment as a matter of law without explanation.

After deliberations, the jury decided that neither Hughes nor the plaintiffs were in the course and scope of their employment at the time of the accident. Because Hughes was not in the course and scope, he was not covered by fellow servant immunity under the Act, and judgment was entered for plaintiffs in a previously agreed-upon amount of $500,000.

This appeal was transferred from the Court of Appeals.

## DISCUSSION

Several of our standards of review are relevant to resolution of this case.

First, our standard of review on summary judgment is often recited and well known:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P. 3d 333 (2009).

When evaluating a district judge's ruling on a motion for judgment as a matter of law, an appellate court applies the same standard as the district court:

"When ruling on a motion for [judgment as a matter of law], the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied." *National Bank of Andover v. Kansas Bankers Sur. Co.*, 290 Kan. 247, 267, 225 P.3d 707 (2010).

Thus " 'a motion for judgment as a matter of law must be denied when evidence exists upon which a jury could properly find a verdict for the nonmoving party.' " *National Bank of Andover*, 290 Kan. at 267 (quoting *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 40, 169 P.3d 1052 [2007]). Moreover, "even where facts are undisputed, it may be possible to draw conflicting inferences from the facts, which would also require the issue to be submitted to the jury," and, therefore, "[t]he matter becomes a question of law for the court's determination where no evidence is presented on a particular issue or where the evidence presented is undisputed and is such that the minds of reasonable persons may not draw differing inferences and arrive at opposing conclusions with reason and justice." *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 126, 815 P.2d 72 (1991) (citing *Sampson v. Hunt*, 233 Kan. 572, 578, 665 P.2d 743 [1983]; *Pilcher v. Board of Wyandotte County Commr's*, 14 Kan. App. 2d 206, 208, 787 P.2d 1204 [1990]).

This case also involves statutory interpretation and construction, which is reviewed on appeal de novo. See *State v. Roberts*, 293 Kan. 29, 33, 259 P.3d 691 (2011).

To the extent resolution of this case requires interpretation of our caselaw precedents, it also raises questions of law reviewable de novo. See *State v. Burnett*, 293 Kan. 840, 847, 270 P.3d 1115 (2012) (citing *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 386, 996 P.2d 821 [2000]).

A preliminary discussion of the basics of pertinent workers compensation provisions is helpful at this point.

The Kansas Workers Compensation Act nullifies employee common-law rights to sue in tort in exchange for guaranteed but limited recovery in an administrative system with judicial review. Covered workers no longer may exercise their common-law rights to sue employers for work-related injuries, but they can count on certain, limited compensation. The Act also makes a trade for covered employers: They need no longer fear unlimited liability on employee claims, but they must purchase insurance or otherwise provide for guaranteed payment of the compensation amounts dictated. See K.S.A. 44-501 *et seq.* The Act underwent substantial statutory revisions in 2011. See L. 2011, ch. 55, sec. 3, effective May 15, 2011. All statutory provisions cited herein reference the version of the statutes in effect at the time of this lawsuit.

The Act provides that a covered worker's remedy under the Act is exclusive. K.S.A. 44-501(b). If the worker experiences a "personal injury by accident arising out of and in the course of employment," K.S.A. 44-501(a), then the Act applies, and no separate civil suit in tort against the employer is permitted, K.S.A. 44-501(b). Under the exclusive remedy provision, "it is well established that a worker who recovers benefits for an on-the-job injury from an employer under the Act cannot maintain a civil action for damages against the employer or against a fellow employee." *Scott,* 281 Kan. at 645.

K.S.A. 44-508(f) contains what is known as the "going and coming rule" of workers compensation law. See, *e.g., Rinke v. Bank of America,* 282 Kan. 746, 752, 148 P.3d 553 (2006) (citing *Chapman v. Beech Aircraft Corp.,* 258 Kan. 653, 907 P.2d 828 [1995]). It provides in pertinent part:

"The words 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to the employee occurring while the employee is on the way to assume the duties of employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence. An employee shall not be construed as being on the way to assume the duties of employment or having left such duties at a time when the worker is on the premises of the employer or on the only available route to or from work which is a route involving a special risk or hazard and which is a route not used by the public except in dealings with the employer."

In other words, a worker who is traveling to and from work is not generally covered by the Act because mere travel to and from work does not, by definition, arise out of and in the course of employment. A worker injured during such travel is not foreclosed by the Act from suing his or her employer in tort.

Caselaw precedent has recognized an exception to the going and coming rule when travel is an intrinsic part of the worker's job. See, *e.g.*, *Sumner v. Meier's Ready Mix, Inc.*, 282 Kan. 283, 289, 144 P.3d 668 (2006) (semi-truck/flatbed trailer driver) (citing *Estate of Soupene v. Lignitz*, 265 Kan. 217, 223, 960 P.2d 205 [1998] [volunteer firefighter]); *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 277, 899 P.2d 1058 (1995) (construction worker). Although plaintiffs argue on appeal that the plain language of the statute does not allow this exception, they did not take issue with the legal underpinnings of the exception in the district court and did not file a prophylactic cross-appeal of the district judge's denial of their motion for judgment as a matter of law. We therefore do not address this argument. See *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 (2008) (appellee who wants to preserve challenge to adverse ruling must file cross-appeal). *Cf. Craig v. Val Energy, Inc.*, 2012 WL 892194, at *4 (Kan. App. 2012) (suggesting exception actually method of analysis).

Examples of workers who would come under the Act because of application of this exception in previous cases have included an oil well driller who customarily drove to assemble his crew, an auto mechanic who traveled annually to an examination, and a salesman who traveled to call on customers. See *Bell v. A.D. Allison Drilling Co.*, 175 Kan. 441, 264 P.2d 1069 (1953) (driller); *Blair v. Shaw*, 171 Kan. 524, 233 P.2d 731 (1951) (auto mechanic); *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 285 P. 536 (1930) (traveling salesman). If travel to and from work arose out of and in the course of employment, a worker injured during such travel is foreclosed by the Act's exclusive remedy provision from suing his or her employer in tort.

The fellow servant doctrine of workers compensation law adds another layer to the intersection of workers compensation and tort

law. It is that intersection about which we are concerned in this case.

If an employee is injured by a coworker while the coworker is acting in the course and scope of his or her employment, then fellow servant immunity under K.S.A. 44-501(b) applies. The relevant portion of the statute states: "Except as provided in the workers compensation act, no employer, *or other employee of such employer*, shall be liable for any injury for which compensation is recoverable under the workers compensation act." (Emphasis added.) This language plainly extends the immunity from a separate civil suit in tort that the employer enjoys under the Act to any coworker tortfeasor who is merely doing his or her job at the time of the injury-causing event. The injured employee is eligible to recover workers compensation but cannot bring a separate civil suit in tort against the coworker.

If, on the other hand, an employee is injured by the tort of a coworker while the coworker is not acting in the course and scope of his or her employment, then fellow servant immunity under K.S.A. 44-501(b) does not apply. As we discussed in our opinion on Hughes' interlocutory appeal, the injured employee is free to sue the coworker tortfeasor as a third party under K.S.A. 44-504(a). *Scott*, 281 Kan. at 646. "What matters is whether [the tortfeasor coworker] was acting within the scope and course of employment when he or she caused injury to [the injured worker]." 281 Kan. at 652.

The question before the district judge on remand was into which of these analytical buckets this case should fall. If Hughes was entitled to fellow servant immunity, then plaintiffs' lawsuits were barred. If he was not entitled to fellow servant immunity, then plaintiffs could pursue their civil actions.

Although the interpretation or construction of the Act's language raises a question of law, once that interpretation or construction has occurred, the ultimate question of whether an accident arises out of and in the course of employment is a question of fact. See *Rinke*, 282 Kan. at 751; see also *Sumner*, 282 Kan. at 293 (court has recognized "[r]epeatedly . . . that resolution of the question of whether an injury arises out of and in the course of employment

is a question of fact") (citing *Foos v. Terminix*, 277 Kan. 687, 691, 89 P.3d 546 [2004]; *Newman v. Bennett*, 212 Kan. 562, Syl. ¶ 3, 512 P.2d 497 [1973]). It is not, as Hughes has consistently maintained, a question of law. However, it may be determined as a matter of law if the evidence can lead to only one factual finding. This is the reason we said in our opinion on the interlocutory appeal that the district judge might yet determine that there was no genuine issue of material fact for trial, *i.e.*, that there was "no evidence to controvert defendant Hughes' claim that he was acting within the scope and course of his employment at the time of the accident." *Scott*, 281 Kan. at 653.

Our decision in *Rinke v. Bank of America* elaborated on the meaning of "arising out of and in the course of employment":

"The term 'arising out of and in the course of employment' was previously discussed by this court:

'The two phrases arising "out of" and "in the course of" employment, as used in our Workers Compensation Act, K.S.A. 44-501 *et seq.*, have separate and distinct meanings; they are conjunctive, and each condition must exist before compensation is allowable. The phrase *"out of"* employment points to the cause or origin of the worker's accident and requires some causal connection between the accidental injury and the employment. An injury arises "out of" employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Thus, an injury arises "out of" employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase *"in the course of"* employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service. [Citations omitted.]' *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 278, 899 P.2d 1058 (1995)." 282 Kan. at 752.

Not surprisingly, most of our previous Kansas cases applying the going and coming rule and the exception for travel intrinsic to employment have arisen in workers compensation appeals dealing with the course and scope of the employment of the injured worker rather than in civil suits brought by the injured worker against a potentially immune tortfeasor coworker. This distinction in procedural posture does not lessen the persuasive power of these cases on the contours of the legal concepts of "arising out of and in the course of employment." But it does mean that our appellate review

has generally focused on whether there was substantial competent evidence to support a district judge's factual finding rather than on whether there was a conflict in evidence such that a genuine issue of material fact demanded a trial or prevented judgment as a matter of law at the conclusion of trial.

The primary case relied upon by Hughes is the Court of Appeals decision in *Messenger v. Sage Drilling Co.*, 9 Kan. App. 2d 435, 680 P.2d 556, *rev. denied* 235 Kan. 1042 (1984). In *Messenger*, Sage Drilling Company and its insurance carrier appealed from the district court's finding that the death of Gary Edward Messenger in a truck accident on the way home from a drilling site arose out of and within the scope of his employment. Both the administrative law judge and the district court "found commuting long distances [to and from the drilling site] was an incident of the job itself." *Messenger*, 9 Kan. App. 2d at 438. And the Court of Appeals concluded that substantial competent evidence supported the finding "that travel was an intrinsic part of Messenger's job." 9 Kan. App. 2d at 439; see also *Soupine*, 265 Kan. at 224 (workers compensation appeal of volunteer firefighter injured in collision with another emergency responder; court cites *Messenger* approvingly as example of case involving travel to work as "integral and necessary part of the employment which benefitted the employer").

The Court of Appeals stated:

"The trial court herein found that the employee had no permanent work site, but was required to travel to often distant locations to perform his job. The court found that the common and accepted practice in the oil well drilling business was that workers would live at some distance from their work sites, and would have to travel daily to reach there. It was also found that the employees had to provide their own transportation, though the employer would reimburse them at the rate of 20 per mile. Finally, the trial court found that the employee would not have been hired if he had refused to undertake the traveling that the job required. Based on all these findings, the court concluded that in his travels the deceased was performing a benefit for his employer, and therefore, his death arose out of and in the course of his employment. In this manner, this case was brought within the exception to K.S.A. 1983 Supp. 44-508(f), and compensation was allowed." *Messenger*, 9 Kan. App. 2d at 440.

Defendant also relies upon this court's decision in *Mitchell v. Mitchell Drilling Co.*, 154 Kan. 117, 114 P.2d 841 (1941). William

Mitchell was a tool pusher and president of an oil company who was killed while driving to supervise a new drilling site. This court's opinion makes it evident that we concluded there was substantial competent evidence supporting the district court's finding that Mitchell was in the course and scope of his employment at the time of the accident, stating:

"There was direct evidence the workman intended to go to the Zenith well. It was logical and proper that, as superintendent of drilling activities, he should be there. The evidence disclosed there were several reasons, involving the interests of the drilling company, which it was reasonable to infer prompted his decision to go by way of Great Bend. He had authority to determine his course of travel and the business he desired to transact for his employer. He was using the company's car. It had machinery on it which is employed in drilling operations. At the time of his unfortunate accident he had progressed sufficiently far to bring him to the Zenith well in time for the commencement of that well. In view of all the circumstances we think it was reasonable to infer the Zenith well was his destination and that he was killed in the course of his employment.

"The accident also arose out of his employment. A necessary part of his employment consisted in traveling from well to well and to any other place at which he might desire to transact business pertaining to drilling activities. Manifestly, part of his business consisted of traveling the highways. The hazards and risks of highway travel were incidents of his employment. It was in connection with those hazards of employment that his death occurred and it cannot be said the accident did not arise out of his employment." 154 Kan. at 121-22.

Defendant further relies upon this court's decision in *Bell*, 175 Kan. 441, where the district court affirmed a workers compensation award in favor of Harvey T. Bell. Bell was an oil field worker and driller who was killed while traveling to assemble a crew for a drilling site. This court held that there was ample evidence to support the district court's finding that Bell was in the course and scope of his employment at the time of his death. 175 Kan. at 445-46.

The last case dealing with an oil field worker upon which Hughes relies is *Newman v. Bennett*, 212 Kan. 562, 512 P.2d 497 (1973). In *Newman*, the district court affirmed a workers compensation award in favor of David W. Newman, who was employed as a pumper on six separately owned sites. Newman died in a car accident when traveling between sites. Upholding the district court's decision, this court stated:

"Here the circumstances revealed, and the fact-finders so declared, the nature of the decedent's work was such that he was expected to use a pickup truck as a part of his employment with all of his employers. He was required to haul heavy tools, equipment and supplies in servicing the leases and keeping the wells in operation. Use of the truck was vital in making repairs as promptly as possible. His duties were not confined to particular premises nor was his pay dependent solely on services to be performed 'on the premises' of each particular lease. Driving a pickup truck, as distinguished from an ordinary passenger automobile, and having it available for immediate use when needed, was definitely a part of the service for which the decedent was being compensated by each employer. It cannot be said that such travel was of a type purely personal to him—he was required to have certain equipment and supplies with him and available while on duty and also to have a mode of rapid transportation. Clearly travel on the public highway was regarded by all as a part of his work." 212 Kan. at 568.

Plaintiffs attempt to distinguish all of these cases from Hughes' situation. And they point to this court's decision in *LaRue v. Sierra Petroleum Co.*, 183 Kan. 153, 325 P.2d 59 (1958), another workers compensation case involving an oil field worker. In *LaRue*, the widow and guardian of minor dependents for Arthur LaRue received a workers compensation award, which was then reversed by the district court. LaRue was a derrick man on a drilling crew who was killed in a car accident when he and other crew members decided to leave the area near the well site where they had been staying in order to go to their homes. This court held that the following findings of the district court were supported by substantial competent evidence:

" '1. That the decedent was not furnished transportation by the respondent as a part of or as an incident of the employment.

" '2. That the driller, Delaney, was not authorized by the respondent to furnish or provide transportation to the decedent as a part or as an incident of the employment.

" '3. That the driller, Delaney, did not furnish and provide decedent transportation as a part of or as an incident of the employment, but rather the transportation was furnished purely as a personal matter between them and had nothing to do with respondent. Delaney merely intended the arrangement for transportation to be one of sharing rides with each other as they had done in the past when they worked together.

" '4. The decedent was not under the direction and subject to the control of the respondent or of the driller, Delaney, or any one else after he left work at the well location, while on the trip home and at the time of his death.

" '5. The trip home by the decedent, which was more than 100 miles from his place of work, was purely a personal mission having no connection with his employment and no work was being performed for the respondent and no benefit was received by it by reason of the trip home.

" '6. That at the time of the accident the decedent was not moving to another location at the request of his employer, but rather he was going home after leaving the duties of his employment.

" '7. That the proximate cause of the decedent's death was not the negligence of the respondent.

" '8. That the driller, Delaney, was not acting as the agent of respondent and was not within the scope of his employment or under the control of the respondent at the time of the accident.' " 183 Kan. at 156-57.

And this court affirmed the district court's reversal of the workers compensation award. 183 Kan. at 157-58.

The cases involving oil field workers have not led to a hard and fast rule about application of the going and coming rule. We have not made a categorical determination that travel is intrinsic to their type of employment, despite some encouragement along that path from our Court of Appeals. See *Halford v. Nowak Construction Co.*, 39 Kan. App. 2d 935, 939, 186 P.3d 206, *rev. denied* 287 Kan. 765 (2008) ("clearest applications" of exception to going and coming rule for travel intrinsic to job involve traveling salesman, oil driller); see also *Ostmeyer v. Amedistaff, L.L.C.*, No. 101,909, 2009 WL 4931359, at *3 (Kan. App. 2009) (unpublished opinion) ("Kansas does recognize that some professions require the employee to travel as a part of the job," including traveling salespersons, oil drillers.).

We decline to enunciate such a hard and fast rule today. Instead, we rely on our past oil field worker cases for pertinent factors guiding consideration of the proof necessary to demonstrate intrinsic travel meriting exception to the going and coming rule.

Payment of mileage was critical to the outcome in *Messenger*, for example, and so was the absence of a permanent work site and the practical necessity of daily travel from home to perform job duties. The benefit of the worker's travel to the employer was mentioned explicitly in *Messenger* and repeatedly alluded to in *Mitchell*. In *Bell*, the travel inherent in the responsibility for assembly of a crew for a drilling site was persuasive. Our *Newman* case relied on

the nature of the vehicle—a pickup truck loaded with tools, equipment, and supplies—as well as recognition that the pumper's duties were not confined to a single work site. In contrast, in *LaRue*, the subject derrick man was on a " 'personal mission having no connection with his employment' " at the time he suffered his fatal injury. 183 Kan. at 157. He was not " 'moving to another location at the request of his employer, but rather was going home after leaving the duties of his employment.' " 183 Kan. at 157. In other words, the travel in which the derrick man was engaged at the time of the accident offered no benefit to his employer.

In short, even though the fact question of whether a particular oil field worker is in the course and scope of his employment when an injury-causing accident occurs must still be decided on a case-by-case basis, consistent patterns have emerged from our prior cases. It was these patterns that should have been relied upon by the district judge on remand from the interlocutory appeal when he evaluated Hughes' motions for summary judgment and for judgment as a matter of law.

Further, and critically important, it was essential for the parties and the district judge to understand that the *only* person whose course and scope of employment mattered for determination of the existence of fellow servant immunity was Hughes. If travel to the job site on the morning of the accident was an intrinsic aspect of Hughes' job, then the going and coming rule did not apply to remove him from the Act; he was within the course and scope of his employment and was entitled to fellow servant immunity from plaintiffs' civil suits. It mattered not—on this particular, narrow, threshold legal issue—whether his passengers were or were not also within the course and scope of their employment at the time of the accident. Hughes' status alone would tell the tale.

It may be that this final point eluded the district judge. We cannot be certain because of the lack of explanation in the record for his ruling on Hughes' motions for summary judgment and for judgment as a matter of law. In any event, we regard the underlying facts of any moment as undisputed. Although plaintiffs were certainly able to point to some evidence that the passengers in Hughes' vehicle were not in the course and scope of their em-

ployment at the time of the accident—they were, after all, uniformly asleep and were not being paid for their ride time—they could not do likewise for Hughes himself.

However Hughes may have characterized the "carpool" in his deposition, at the time of the accident, he had gathered the crew he was responsible for having assembled and ready to work 90 miles from home by 6:45 a.m. He was getting paid for his mileage, Duke Drilling's explicit recognition that his driving was of benefit to its enterprise. Hughes' work site was changeable, and Hughes' ability to adapt and appear with his crew as ordered was part of what Duke Drilling was paying his wages for. Hughes was not on a personal mission at the time of the accident. Indeed, according to all of the witnesses, he was performing an informal but customary duty in his and Duke Drilling's industry.

On this record there was no genuine issue of material fact for trial in these consolidated cases. Plaintiffs came forward with no relevant contrary evidence on remand, and the district judge erred in denying Hughes' summary judgment motion. No testimony admitted at trial changed this. Thus the district judge also erred by rejecting Hughes' motion for judgment as a matter of law made at the close of the evidence.

### Conclusion

The evidence in this case could only show that the travel in which Christopher Hughes was engaged on the morning of the accident that killed Jeffery Wade Scott and injured Jeffrey Wagner and Adam Stein was an intrinsic part of Hughes' job. The going and coming rule under K.S.A. 44-508(f) thus did not apply, and Hughes was within the course and scope of his employment. This means he was entitled to fellow servant immunity under K.S.A. 44-501(b), and plaintiffs' civil lawsuits against him were barred. The district court's decision is reversed and the $500,000 judgment against Hughes is therefore vacated, and this case is remanded for entry of appropriate orders dismissing all of the plaintiffs' claims.

Reversed and remanded.