(303 P.3d 719)
No. 108,125

DAVID C. WILLIAMS, *Appellee*, v. PETROMARK DRILLING, LLC, and ACE FIRE UNDERWRITERS INS. CO., *Appellants*.

Opinion filed June 7, 2013.

*Douglas C. Hobbs* and *Ryan D. Weltz*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellants.

*Scott J. Mann*, of Mann Law Offices, LLC, of Hutchinson, for appellee.

Before PIERRON, P.J., BRUNS and POWELL, JJ.

PIERRON, J.: Petromark Drilling, LLC and Ace Fire Underwriters Insurance Company (Petromark) appeal from the Workers Compensation Board's (Board) reversal of the administrative law judge's (ALJ) denial of David C. Williams' workers compensation claim. Petromark argues that Williams' injuries are not compensable under either K.S.A. 2010 Supp. 44-508(f)'s going-and-coming rule or K.S.A. 2010 Supp. 44-501(d)(1)'s "willful failure to use a guard" rule. We agree on the issue of the going-and-coming rule and reverse the Board's finding.

*Facts*

At the time of his automobile accident, Williams was 23 years old. He had been working as a back-up hand for Petromark since September 28, 2010. On his first day of work he signed a form, the back of which contained the following policy: "Seat belts will be used by all employees and all occupants of vehicles driven on of-

ficial business. This requirement applies to all personal vehicles (which receive reimbursement for mileage) used by employees which are used to transport crews from home to the rig site and back."

Williams worked from 7 a.m. to 3 p.m. on driller Kenneth Roach's crew. The crew consisted of a back-up hand, Williams, who worked under the chain man, Shane Link, who worked under the derrick man, Garrett Schneip, who worked under the supervisor, Roach. The crew travelled to remote drill sites, all within a 10-mile radius of Bazine, Kansas. It took approximately a week to drill an oil well. When the drilling was completed, the rig was disassembled, loaded onto a truck, moved to a new drill site, and reassembled. Williams testified his job required him to travel to the drill sites. Roach testified his crew members could live anywhere but had to be willing to travel to the drill sites.

Roach and Link lived in Great Bend, which was about 50 miles from the drill site; Williams lived in Pawnee Rock, which was about 60 miles from the drill site; and Schneip lived near Bazine. Roach provided his crew members optional transportation to the drill sites from Great Bend. Williams traveled from his home in Pawnee Rock to Link's home in Great Bend. Link and Williams rode in Roach's personal vehicle from Link's home to the drill site and back. Williams then traveled from Great Bend to Pawnee Rock. Schneip drove his personal vehicle to and from the drill site. Roach was paid mileage because he was transporting his crew members. Whether they rode with Roach or drove their personal vehicles, the crew members were not compensated for the trips to and from the drill site—no hourly wage, no mileage, no per diem. Williams' pay started when he arrived at the drill site and ended when he clocked out at the site.

On October 10, 2010, Williams rode with his wife to Great Bend. He then rode with Roach to the drill site. Williams got Roach's permission to ride directly back to Pawnee Rock with Christopher LaMaster, who was filling in for Link. Williams did this for his own convenience—LaMaster's route was more direct and Williams would not have to wait for transportation from Great Bend. Roach

did not tell them which route to take from the drill site to Pawnee Rock.

The tires on LaMaster's personal vehicle were low so he aired them up before leaving the drill site. LaMaster drove and Williams rode in the passenger seat with his seatbelt on. LaMaster did not deviate from the route to Pawnee Rock and stopped only once to air up a back tire on his vehicle that had gotten low. Williams exited the vehicle to help LaMaster air up the tire with a cigarette lighter pump. They only aired up the tire for 10 minutes, or halfway, because LaMaster was in a hurry to get home. Williams did not fasten his seatbelt upon reentering the vehicle—he testified he did not know why he did not fasten it, LaMaster did not ask him to fasten it, and he was unaware of Petromark's seatbelt policy. Before they reached Pawnee Rock, the tire blew out and the vehicle rolled over. Williams was ejected from the vehicle and suffered injuries. He called Roach from the emergency room that evening to report the accident and his injuries.

Williams filed a workers compensation claim on January 12, 2011. On December 12, 2011, the ALJ entered a decision in favor of Petromark. The ALJ concluded that Williams' injuries were not compensable because they did not arise out of and in the course of his employment:

> "At the time of the accident giving rise to [Williams'] injuries, he had left work for the day and was on his way home, as a passenger in a co-worker's vehicle. He was not being paid or performing any services or duties for his employer. His accident did not occur 'in the course of' his employment. [Williams'] duties on the drilling rig did not include driving. [Williams'] injuries did not 'arise out of' his employment with Respondent.
>
> . . . .
>
> "Even though [Williams] was an oilfield worker, travel was no more intrinsic to his employment than any other commuter on the highway. At the time of his accident, [Williams] was not traveling between well sites, and he was not performing any services for his employer or advancing his employer's interests. He was simply on his way home at the end of the work day."

The ALJ also concluded that Williams' claim would not have been barred due to his failure to wear a seatbelt:

> "Here, there is no evidence of 'intractableness, the headstrong disposition to act by the rule of contradiction.' There is no evidence [Williams] was ever disci-

plined for failure to wear his seatbelt. The evidence is simply that he was not wearing it at the time of the accident, as a result of his oversight. In any event, the company policy does not appear to apply, as the LaMaster vehicle was not a company vehicle, was not being used in official company business, and LaMaster was not being paid or reimbursed mileage for his use of the vehicle."

On April 26, 2012, the Board reversed the ALJ's decision and entered an award in favor of Williams. Three members of the Board concluded that Williams' injury did arise out of and in the course of his employment:

"[Williams'] job as an oil drilling crew member required that he travel from drill site to drill site. He was not paid wages when traveling from his home to whatever site the crew was working on, nor was he reimbursed for his mileage expense if he drove his own vehicle. Nevertheless, the very nature of the work necessitated travel to ever-changing locations. Travel was inherent to the job. When travel is inherent to or an integral part of the job, the going and coming rule does not apply. As such, [Williams'] accident, which occurred while [Williams] was in a vehicle travelling from the drill site to his home, arose out of the nature, conditions, obligations and incidents of his employment with respondent."

The Board also concluded that Williams' claim was not barred by his failure to wear a seatbelt:

"When the accident occurred, [Williams] was not wearing a seat belt. Respondent's policy was that all employees use the seat belt when travelling in a company owned vehicle on any official business. The seat belt policy expressly provided that the requirement applied to employee travel in personal vehicles used to transport crews from home to the rig site and back and which received reimbursement for mileage. Although [Williams] was a passenger in a personal vehicle being used to transport members of the crew to their homes, mileage for the trip was not being reimbursed. Accordingly, by its terms, the respondent's seat belt policy did not apply to the trip where [Williams] was injured. The language of the policy itself is, however, further evidence of the inherent nature of travel to the employment."

Petromark timely appeals.

*Analysis*

Petromark argues that Williams' injuries were not compensable either because they did not arise out of and in the course of his employment or because they resulted from his failure to use a seatbelt. The facts regarding Williams' employment and accident appear to be undisputed.

This case involves the review of the Board's determination that the accident occurred within the course and scope of Williams' employment, as well as the Board's interpretation and application of the going-and-coming rule, as set forth in K.S.A. 2010 Supp. 44-508(f).

Generally, the issue of whether an employee's accident arose out of and in the course of employment is a question of fact. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013). But it may be determined as a matter of law if the evidence can lead to only one factual finding. See *Scott v. Hughes*, 294 Kan. 403, 413-16, 275 P.3d 890 (2012). We review the Board's factual findings to determine whether they are supported by substantial evidence in light of the record as a whole. K.S.A. 2010 Supp. 77-621(c)(7), (d); *Quintana v. H.D. Drilling, LLC*, Nos. 106,126, 106,127, 106,131, 2012 WL 1759430, at *2 (Kan. App. 2012) (unpublished opinion). Whereas the issue of whether the Board erroneously interpreted or applied the law is reviewed de novo. K.S.A. 2010 Supp. 77-621(c)(4); *Craig v. Val Energy, Inc.*, 47 Kan. App. 2d 164, 166, 274 P.3d 650 (2012), *rev. denied* 297 Kan. 1244 (2013).

In order to receive workers compensation benefits, an employee must show that his or her accidental injury arose "out of and in the course of employment." K.S.A. 2010 Supp. 44-501(a). The phrase "out of" employment requires a showing of a causal connection between the accidental injury and the conditions under which the work is required to be performed, and the phrase "in the course of" employment requires a showing that the injury happened while the worker was at work in the employer's service. *Rinke v. Bank of America*, 282 Kan. 746, 752, 148 P.3d 553 (2005).

An injury is not considered to have arisen out of and in the course of employment if it occurred while the employee was "on the way to assume the duties of employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence." K.S.A. 2010 Supp. 44-508(f). This is referred to as the going-and-coming rule. See *Hughes*, 294 Kan. at 413-14. The rule is based upon the premise that "while on the way to or from work, the employee is subjected only to the same risks or hazards as those

to which the general public is subjected." *Sumner v. Meier's Ready Mix, Inc.*, 282 Kan. 283, 289, 144 P.3d 668 (2006). Therefore, such risks are not causally related to the employment. 282 Kan. at 289.

Kansas courts have long recognized an exception to the going-and-coming rule where travel is an intrinsic part of the employee's job. See *Hughes*, 294 Kan. at 414 (citing *Bell v. A.D. Allison Drilling Co.*, 175 Kan. 441, 264 P.2d 1069 [1953]). While caselaw deems inherent travel an exception to the going-and-coming rule, "it appears the analysis is really whether travel has become a required part of the job such that the employee actually assumes the duties of employment from the moment he or she leaves the house and continues to fulfill the duties of employment until he or she arrives home at the end of the workday." *Craig*, 47 Kan. App. 2d at 168-69 (rejecting argument that judicially created inherent-travel exception to K.S.A. 44-508(f) not viable after *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 214 P.3d 676 (2009), because it contradicts clear statutory language); *Quintana*, 2012 WL 1759430, at *6-7 (same; noting Kansas Supreme Court has not departed from any cases recognizing inherent-travel exception since *Bergstrom*).

In support of its application of the inherent-travel exception to the going-and-coming rule, the Board majority cited *Craig*, 47 Kan. App. 2d 164, and *Messenger v. Sage Drilling Co.*, 9 Kan. App. 2d 435, 680 P.2d 556, *rev. denied* 235 Kan. 1042 (1984). The dissenting Board members distinguished *Craig* and *Messenger*, found *LaRue v. Sierra Petroleum Co.*, 183 Kan. 153, 325 P.2d 59 (1958), to be more analogous, and voted for application of the going-and-coming rule.

In *Messenger*, a drilling crew member died in a truck accident that occurred on his way home from a drill site. The relevant facts were: (1) The drilling company did not hire a new crew near each drilling site; (2) it was the customary practice in the oil well drilling business that crew members lived at some distance away and traveled daily to reach the job sites; (3) crew members had no permanent job site but, instead, were expected to be amenable to travel to and from drilling sites, sometimes over 200 miles away; (4) crew members were required to provide their own transpor-

tation, for which they were paid mileage at the rate of 20¢ per mile; and (5) the drilling company benefited from the industry's customary transportation arrangements and when crew members agreed to travel. The *Messenger* court held that the inherent-travel exception was applicable because the drilling crew's willingness to travel furthered the interests of their employer. In doing so, the court relied on *Bell*, 175 Kan. 441 (travel inherent because employee was engaged in obligatory service of procuring·drilling crew, which was beneficial to both employee and employer). *Messenger*, 9 Kan. App. 2d at 439-40.

In *Craig*, a driller was injured in an automobile accident that occurred on his way home from the drilling company's shop. The relevant facts were: (1) Craig was driving a crew member home at the time of the accident; (2) Craig used his personal vehicle to drive his crew to the oil rig site and back; (3) Craig would not have been hired if he had not been able to transport his crew; (4) Craig was paid mileage for the trips to his crew members' houses, the shop, and the oil rig site; (5) Craig was also paid a per diem for showing up and $24 per day for every crew member who showed up; (6) the drilling company sent Craig to the shop to fix the broken oil rig; and (7) Craig's work at the shop was temporary. The *Craig* court held that the inherent-travel exception was applicable. In doing so, the court found *Messenger* to be analogous based on the mileage reimbursement, lack of permanent work site, transportation of a crew member, and mutually beneficial transportation arrangement. *Craig*, 47 Kan. App. 2d at 170-71.

In *LaRue*, a drilling crew member died in a car accident that occurred on his way home from a drill site. The relevant facts were: (1) The crew was staying near the drill site; (2) the driller and LaRue decided to travel home, over 100 miles away, and meet the rest of the crew at the new drill site in the morning; (3) the driller was driving LaRue home at the time of the accident; (4) the drilling company did not provide transportation for crew members or authorize the driller to provide such transportation; (5) crew members were not paid mileage; and (6) the proximate cause of LaRue's death was not the negligence of the drilling company. The *LaRue* court held that because the travel was strictly personal and did not

further the employer's interests, the employee's death did not arise out of and in the course of employment. See 183 Kan. at 156-58.

The recent Court of Appeals case of *Quintana* is instructive. Quintana, a drilling crew member, was injured in an automobile accident that occurred on his way home from a drill site. The relevant facts were: (1) Quintana was being driven home by his supervisor, the driller, at the time of the accident; (2) the crew member who drove the crew was paid mileage; (3) the crew members were paid a per diem of $8; and (4) the drilling company benefited from having the driller drive the crew, as was customary in the industry, because the crew would arrive on time and it would not have to hire new workers whenever the rig moved locations, which was every 15 to 20 days.

The *Quintana* court held that the inherent-travel exception was applicable. In doing so, the court found *Messenger* to be analogous:

"Quintana was expected to travel considerable distances from his home to the job site. H.D. Drilling, LLC chose not to hire new workers at each new job site location but, rather, relied on the same crew to travel together between the different job sites. Because of this, Quintana *was exposed to an increased risk of injury and was injured while engaging in an activity contemplated by his employer.* [Citation omitted.] Quintana's willingness to travel furthered H.D. Drilling, LLC's interests. Thus, in his travels, Quintana was performing a benefit for his employer, and therefore his injuries arose out of and in the course of his employment." 2012 WL 1759430, at *7 (Emphasis added.)

*Scott*, 294 Kan. 403, is also helpful. Hughes, a driller, got into an automobile accident while he was driving his crew members to a drill site, killing one crew member. The relevant facts were: (1) The crew members could choose to ride with the driller or drive themselves to the drill site, which was about 90 miles away and changed every 12 to 16 days; (2) crew members customarily rode with the driller so that everyone arrived at the same time; (3) the drilling company paid mileage to one driver for the trip to the drill site and back, but not for picking up crew members who lived off the direct route; (4) crew members were paid hourly beginning upon arrival at the drill site; (5) the crew returned home after each workday because the drilling company did not provide lodging or

a food stipend; and (6) crew members were paid $15 "ride time" if the drilling site was over 100 miles one way.

The *Scott* court held that the evidence could only support one finding—that travel was an intrinsic part of the driller's job. But in doing so, the court noted that there was evidence to support a finding that travel was not an intrinsic part of a crew member's job—the crew members were asleep and not being paid for their ride time. The court examined its past oil driller cases for pertinent factors to determine whether the inherent-travel exception to the going-and-coming rule applied. The court's conclusion was based on two main facts: Hughes was paid mileage—the drilling company's "explicit recognition that his driving was of benefit to its enterprise" —and he was not on a personal mission. 294 Kan. at 420-22 (noting that the "[p]ayment of mileage was critical to the outcome in *Messenger*").

The facts of this case are undisputed. Petromark did not hire a new crew at every drill site. Williams, a crew member, had no permanent work site. Instead, he was required to travel to ever-changing drill sites. Roach, the driller, was paid mileage for driving his crew members to and from the drill site. Whether they drove themselves or rode with Roach, crew members like Williams and LaMaster were not paid for their travel to and from the drill site.

The key to resolution of this case is whether Williams' travel, at the time of his accidental injury, was furthering Petromark's interests. There was a mutually beneficial transportation arrangement between Williams (free ride to and from the drill site) and Petromark (did not have to pay for crew's food or lodging or find a new crew at every drill site). But Williams chose to ride from the drill site with LaMaster instead of Roach. Roach's travel was definitely inherent to his employment because it furthered Petromark's interests. The same cannot be said of Williams' travel at the time of his accidental injury. He was on a personal mission to get home sooner. The proximate cause of Williams' injury was LaMaster's rather than Petromark's negligence.

The Board misapplied the law to the facts of this case. The ALJ correctly found that Williams' claim was barred by the going-and-coming rule. The Board erred by reversing the ALJ and finding

the inherent-travel exception to the going-and-coming rule was applicable.

We reverse the Board's award and affirm the judgment of the ALJ that Williams' injuries were not compensable because they did not arise out of and in the course of his employment.

Reversed.