IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,740

In the Matter of the Wrongful Conviction of
ROBERT WILLIAM DOELZ.

SYLLABUS BY THE COURT

Before a person can be compensated for time spent incarcerated while wrongfully convicted of a crime, K.S.A. 2023 Supp. 60-5004(c)(1)(C) requires the claimant for compensation to prove three things. First, that he or she did not commit the crime of conviction. Second, that he or she was not an accessory or accomplice to the crime. And third, that by demonstrating the first two requirements, the claimant obtained one of three possible outcomes: (1) the reversal of his or her conviction; *or* (2) dismissal of the charges; *or* (3) a finding of not guilty upon retrial.

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Oral argument held November 1, 2023. Opinion filed August 9, 2024. Affirmed.

*Greg N. Tourigny*, of The Tourigny Law Firm, LLC, of Kansas City, Missouri, argued the cause, and *Sophie Woodworth*, of Holman Schiavone, LLC, of Kansas City, Missouri, was with him on the brief for appellant.

*Dwight R. Carswell*, deputy solicitor general, argued the cause, and *Kris W. Kobach*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: In 2019, this court reversed Robert William Doelz' conviction for possession of methamphetamine with intent to distribute. We found Doelz' Fourth

1

Amendment rights had been violated by a warrantless search and concluded that the fruits of that search should have been suppressed. *State v. Doelz*, 309 Kan. 133, 142, 432 P.3d 669 (2019). On remand, the State dropped the charge and did not pursue a retrial.

Doelz then filed a petition under K.S.A. 2020 Supp. 60-5004 seeking compensation for the more than four years he spent in prison for the now reversed conviction. In order to recover statutory compensation under our wrongful conviction scheme, a claimant must establish by a preponderance of evidence that:

> "(A) The claimant was convicted of a felony crime and subsequently imprisoned;

> "(B) the claimant's judgment of conviction was reversed or vacated and either the charges were dismissed or on retrial the claimant was found to be not guilty;

> "(C) the claimant did not commit the crime or crimes for which the claimant was convicted and was not an accessory or accomplice to the acts that were the basis of the conviction and resulted in a reversal or vacation of the judgment of conviction, dismissal of the charges or finding of not guilty on retrial; and

> "(D) the claimant did not commit or suborn perjury, fabricate evidence, or by the claimant's own conduct cause or bring about the conviction. Neither a confession nor admission later found to be false or a guilty plea shall constitute committing or suborning perjury, fabricating evidence or causing or bringing about the conviction under this subsection." K.S.A. 2023 Supp. 60-5004(c)(1).

The State and Doelz filed cross-motions for summary judgment. The parties agreed that Doelz had satisfied the requirements in K.S.A. 2023 Supp. 60-5004(c)(1)(A), (B), and (D)—he was convicted of a felony crime, imprisoned because of that conviction, his conviction was reversed, the charges were dismissed, and he did not commit perjury or fabricate evidence. At issue both in the district court—and now here on appeal—was what, precisely, a claimant must prove under subsection (c)(1)(C).

In denying both motions for summary judgment, the district court held that K.S.A. 2023 Supp. 60-5004(c)(1)(C) requires a claimant to establish that the fact the claimant did not commit the crime *resulted in* one of three outcomes—either the reversal or vacation of the conviction, the dismissal of the charges, or a finding of not guilty on retrial. As to the first possible outcome, the lower court found that Doelz' conviction was reversed on appeal because of a Fourth Amendment violation, not because Doelz did not commit the crime. As to the third possible outcome, the court noted that Doelz was not retried. Finally, considering the second option—a dismissal of the charges—the lower court found that because the summary judgment record contained no evidence as to why the charges were dismissed, there remained a disputed issue of material fact to be resolved at trial.

The district court then conducted a bench trial in August 2022. Doelz testified that he was innocent of the charged crime because the drugs were not his. After Doelz rested, the State moved for judgment as a matter of law because Doelz did not produce any evidence that the charge against him was dismissed because he did not commit the crime. The district court granted the motion. In doing so, the district court declined to make a factual finding one way or the other concerning Doelz' alleged innocence. Instead, the district court found that Doelz "did not offer any evidence that the reason for the dismissal was because he did not commit the crime for which Claimant was convicted." As such, the district court held that this "lack of evidence of one element required to be proven under the Act means the rest of the claim fails as well. Because Claimant has failed to prove a necessary element of his claim, there is no need to address the other elements."

Doelz timely filed a direct appeal to this court. See K.S.A. 2023 Supp. 60-5004(l) ("The decision of the district court may be appealed directly to the supreme court pursuant to the code of civil procedure."). His appeal puts this question squarely before

3

us:  does K.S.A. 2023 Supp. 60-5004(c)(1)(C) require—as an element of a claim for compensation—a causal connection between a claim of innocence and an ultimate outcome? We answer yes. Today we adopt the district court's interpretation of the statute and affirm the district court's grant of the State's motion for judgment as a matter of law, because Doelz failed to prove by a preponderance of the evidence that the State dismissed the charge against him *because* he did not commit the crime.

## DISCUSSION

We apply the same standard as the district court when evaluating a district court's ruling on a motion for judgment as a matter of law, resolving all facts and inferences drawn from the evidence in favor of the party seeking review. *Scott v. Hughes*, 294 Kan. 403, 412, 275 P.3d 890 (2012). When the district court's decision is based on the interpretation of a statute, we exercise unlimited review. The most fundamental rule of statutory interpretation is that the intent of the Legislature governs if that intent can be ascertained. We look first to the plain language of the statute, giving common words their ordinary meaning. Only if a statute is ambiguous will we resort to examining legislative history or canons of statutory construction. *State v. Angelo*, 316 Kan. 438, 450-51, 518 P.3d 27 (2022).

Here, the plain language of the statute is inadequate to determine its meaning. K.S.A. 2023 Supp. 60-5004(c)(1)(C) reads in full:

> "[T]he claimant did not commit the crime or crimes for which the claimant was convicted and was not an accessory or accomplice to the acts that were the basis of the conviction and resulted in a reversal or vacation of the judgment of conviction, dismissal of the charges or finding of not guilty on retrial."

4

The sentence structure is grammatically obtuse, if not simply wrong. The phrase "and resulted in" has no predicate, leaving a reader to wonder without clear answer—*what* resulted in? We cannot tell from the plain language. Although a simple word substitute does fix the plain meaning into grammatically sensible prose. Changing the phrase "and resulted in" to "which resulted in" makes the meaning plain and gives rise to at least a suspicion that this is what the Legislature meant. We are not free, however, to simply rewrite statutes or alter words to achieve greater clarity. *League of Women Voters of Kansas v. Schwab*, 317 Kan. 805, 814, 539 P.3d 1022 (2023) (this court relies only on the text of the statute, and cannot "determine what the law should or should not be"); *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017) ("[W]e read the statutory language as it appears, without adding or deleting words.").

Instead, we must conclude that this error in the language creates an ambiguity of meaning. Thus, we will "move to construction—employing canons, searching legislative history, and identifying substantive background considerations—to define and accomplish legislative purpose." *State v. Jordan*, 303 Kan. 1017, 1021, 370 P.3d 417 (2016).

The legislative history of K.S.A. 2023 Supp. 60-5004 demonstrates that the Legislature only intended this statute to compensate the factually innocent. The three legislators who explained their votes discussed the importance of providing compensation for those that are wrongfully convicted and later exonerated because of actual innocence. The written testimonies reflected the same concerns. The Innocence Project referred to those who have spent time "behind bars for crimes they did not commit." Hearing on S.B. 336 Before the Kansas Senate Judiciary Committee (Feb. 14, 2018) (testimony of Michelle Feldman). The ACLU Policy Director pointed to individuals that have been proven innocent due to DNA testing. Hearing on H.B. 2579 Before the House Committee on the Judiciary (Feb. 14, 2018) (testimony of Vignesh Ganapathy). The testimonies frequently referenced Lamonte McIntyre, Richard Jones, and Floyd Bledsoe, all three of

whom were exonerated after their convictions were set aside because they were determined to be actually innocent. Professor Alice Craig referred to pop culture story lines, "[f]rom Roger Thornhill in North by Northwest, Andy Dufresne in Shawshank Redemption and Tom Robinson in To Kill a Mockingbird." Hearing on S.B. 336 Before the Kansas Senate Judiciary Committee (Feb. 14, 2018) (testimony of Prof. Alice Craig). And many of the testimonies discussed expungement and exoneration, rather than simply reversed convictions. See Exonerate, Black's Law Dictionary 721 (11th ed. 2019) ("To clear of all blame; to officially declare [a person] to be free of guilt."); Exoneree, Black's Law Dictionary 722 (11th ed. 2019) ("Someone who is relieved of blame, responsibility, or accusation; esp., someone who is officially cleared from a wrongful criminal conviction."); Expunge, Black's Law Dictionary 727 (11th ed. 2019) ("To remove from a record, list, or book; to erase or destroy."); Expungement of Record, Black's Law Dictionary 727 (11th ed. 2019) ("The removal of a conviction . . . from a person's criminal record.").

This history plainly indicates the Legislature intended to compensate only individuals who are determined to be actually or factually innocent. It did not intend to compensate every criminal defendant whose conviction was reversed on appeal. See *In re Spangler*, 318 Kan. 697, 700, 706, 547 P.3d 516 (2024) (concluding the Legislature intended to restrict compensation under K.S.A. 2023 Supp. 60-5004 to "[o]nly someone innocent of the criminal conduct," and holding "the claimant must show factual innocence from the charges giving rise to criminal liability before receiving compensation").

Given this clear legislative purpose, it is apparent that the suspected meaning of K.S.A. 2023 Supp. 60-5004(c)(1)(C) is in fact its intended meaning—that is, the Legislature intended to require in this subsection that a claimant for compensation must prove three things. First, that he or she did not commit the crime of conviction. Second, that he or she was not an accessory or accomplice to the crime. And third, that by

6

demonstrating the first two requirements, the claimant obtained one of three possible outcomes: (1) the reversal of his or her conviction; *or* (2) dismissal of the charges; *or* (3) a finding of not guilty upon retrial. In other words, that the first two elements "resulted in" one of three possible outcomes.

Below, the trial court provided Doelz the opportunity to prove up his central claim—that the prosecutor, on remand, dismissed the charges because Doelz did not actually commit the crime. But Doelz offered no evidence to show this, and in fact he now admits there is no such evidence. Instead, he makes a legal argument that because his conviction was reversed, he is once more cloaked in the presumption of innocence which is sufficient as a matter of law to prove both that he "did not commit the crime" and that his case was dismissed because of his innocence.

Doelz' arguments are unavailing. As demonstrated above, the statute's legislative history makes it clear that the overarching intent of the statute is to provide redress for individuals who are *actually* innocent. This is a distinct category from the "legal" innocence that Doelz attempts to rely on. Legal innocence is "'"[t]he absence of one or more procedural or legal bases"'" supporting a conviction and sentence, while "actual innocence refers to '[t]he absence of facts that are prerequisites for the sentence given to a defendant."'" *Nadeem v. State*, 298 Neb. 329, 337, 904 N.W.2d 244 (2017). Determining whether a person is "actually innocent" does not require inquiring into "the legal status of a petitioner's conviction . . . . Rather, actual innocence is an inquiry of historical fact." *In re Lester*, 602 S.W.3d 469, 475 (Tex. 2020). "In other words, actual innocence means that a defendant did not commit the crime for which he or she is charged. Or, as the U.S. Supreme Court has explained, 'A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime.'" *Nadeem*, 298 Neb. at 337. "The discretionary decision of the State to dismiss the case does not establish actual innocence." *Rhoades v. State*, 880 N.W.2d 431, 447 (Iowa 2016).

7

When K.S.A. 2023 Supp. 60-5004(c)(1)(C) mandates a claimant for compensation prove both that he "did not commit the crime" and that this "resulted in" either a reversal, a dismissal, or a not guilty verdict, the statute is describing "actual innocence" as opposed to mere "legal innocence." Doelz objects that because he cannot control the fact that he was not retried, this result is "unfair" because it burdens him more heavily than other claimants who could seek relief under one of the other two alternatives (either reversal or a not guilty verdict because of actual innocence).

We take his point to heart—that it is possible a criminal defendant could be *both* actually innocent *and* the victim of an unconstitutional search. But the Legislature clearly anticipated this possibility by providing that a claimant can also prevail by demonstrating that a charge was dismissed after remand because of actual innocence. Doelz—and similarly situated claimants in the future—would have been free to use the evidentiary tools of this civil proceeding to investigate and present to a fact-finder the motivating reason and underlying facts that sit behind a prosecutor's decision not to continue to pursue charges after a reversal by the appellate courts. But he did not.

Affirmed.